[Civ. No. 22756.   Second Dist., Div. One.   Apr. 9, 1958.]

CLYDE R. BURR, as Executor, etc., et al., Respondents, v. CURTIS V. CRELLIN, Appellant.

Roland Maxwell, Paul H. Marston and Richard W. Olson for Appellant.

Newell & Chester and Theodore A. Chester for Respondents.

WHITE, P. J.—Defendant husband appeals from a judgment against him for breach of an agreement between himself and his former wife, now deceased, for the support of said wife and their children, for the settlement of their property rights and for the mutual release of all their claims against each other. Their agreement originally consisted of two documents dated and signed by them on June 1, 1934, and entitled "Property Settlement, Agreement for Support and Mutual Release" and "Supplemental Agreement" respectively.

On March 18, 1935, and while they were husband and wife, another "Property Settlement, Agreement for Support and Mutual Release" was made by them. It cancelled and superseded the "Property Settlement, Agreement for Support and Mutual Release" of June 1, 1934, and provided that the Supplemental Agreement of June 1, 1934 "shall remain in full force and effect in conjunction with this agreement."

The "Property Settlement, Agreement for Support and Mutual Release" included provisions for the support of plaintiffs who were the then wife and minor children of defendant. The amount of support payable monthly was conditioned upon the marital status of the wife, the minority of the respective children, and the continued life of each. Payments having been made as required to be made to the wife until she re-

married and then died, and to the two children until each became 21 years of age, there are no further payments to be made under that agreement.

This action was commenced by defendant's former wife and his two children. His former wife, Yvonne Barbee died and Clyde R. Burr, as executor of her estate was substituted as a plaintiff. The action is for moneys claimed to be due under the supplemental agreement, from which the following paragraph is quoted:

"1. Subject to the maximum amounts hereinafter fixed, if at any time, or from time to time, the monthly income of First Party from any and all gifts, trusts, devises, bequests or inheritances, given, created, or left to him, or from any other sources other than his own earnings, after deducting all taxes required to be paid on account of same, shall exceed twice the amount required at such time to be paid by First Party under the agreement and property settlement first above mentioned, then the First Party will pay twenty-five per cent (25%) of such excess as long and as often as such excess continues in three (3) equal parts to Second Party and each of the two children of the parties, Anne Crellin and Edward Crellin, as long as all three remain living, except as hereinafter provided. Such sums shall be in addition to the amount of money which First Party is obligated to pay under the terms of the property settlement agreement, agreement for support and mutual release. For the purpose of determining the amount of First Party's said income the amount of income from any property acquired from such sources but disposed of by him in any manner shall be included in the computation."

The court found on competent evidence, and it is no longer disputed, that defendant received unearned income as follows:

| Year | Amount | Twice the Payments required by Agreement for Child Support | 25% of Excess |
|---|---|---|---|
| 1949 .....$ 8,838.12 | | $7,200.00 | $ 409.53 |
| 1950 ..... 10,720.96 | | 7,200.00 | 880.24 |
| 1951 ..... 9,739.31 | | 7,200.00 | 634.82 |
| 1952 ..... 12,106.38 | | 5,940.00 | 1,516.57 |
| 1953 ..... 14,602.47 | | 2,100.00 | 3,125.61 |
| 1954 ..... 17,212.43 | | ....... | 4,303.10 |
| 1955 ..... 12,125.68 | | ....... | 3,031.42 |
| 1956 1/1-8/16 8,282.50 | | ....... | 2,070.62 |

The children had their respective twenty-first birthdays on May 13, 1952, and May 28, 1953.

By the judgment, the court apportioned the "25% of the excess" as shown above between the two children, specified the dates from which the various amounts were to bear interest, what portions were to be paid directly to the children and what payments were to be made in trust as provided by other sections of the agreement.

Appellant contends that it was error to give judgment against defendant without "deducting all taxes required to be paid on account of" such unearned income. The court found that no evidence was offered of taxes required to be paid by defendant on account of such unearned income. From a careful examination of the record, only the following excerpts concern income taxes.

"MR. MAXWELL (Attorney for Appellant): Because of the matter of deduction of income tax, your Honor, there is a question which arises, or the wording of the clause with which we are concerned, there is a question which arises on the basis for tax deduction. Now, we have before the Court so far as the evidence has indicated, the income which has been received by the defendant, and I would assume, therefore, that the matter of determination of the amount of that deduction would be an arithmetical problem based upon the laws which would apply in court having the necessity of determining whether the measure for the deduction would be the status which Mr. Crellin had at the time the agreement was signed, or whether it would be that status as it has changed from time to time; and if any further evidence should be introduced on that point, why, we are not in a position of holding it out, or holding it back, but I make this statement for whatever guidance the Court may be able to give with respect to that problem.

"THE COURT: Is money received under a testamentary trust subject to income tax?

"MR. MAXWELL: Income would be.

"THE COURT: Income from that——

"MR. MAXWELL: Income would be, yes, it would be subject to income tax."

Then after some discussion of inheritance taxes and the offer and withdrawal of exhibits relating to them, the following transpired:

"MR. MAXWELL: I think that it relates only to the income,

and I think we are concerned with income taxes, after a lot more mature consideration of it."

Plaintiffs then introduced as their exhibits the inheritance and estate tax returns so withdrawn by defendant.

"Mr. Maxwell: One more question, if I may.

"The Court: Very well.

"Redirect Examination

"Mr. Maxwell: Q. Mr. Crellin, you paid income tax on deposits of income received by you from any trust with respect to which there has been evidence? A. Yes."

After a recross-examination by which no facts or figures were elicited, in reply to a question regarding a figure given in the answer which had been verified by defendant's attorney, defendant testified: "This is the first time I have ever seen this document, so it doesn't make sense to me. All I could say was I have turned in all of my duplicate income tax returns to Mr. Maxwell; and if that figure corresponds to the income tax that I filed that year, it is the correct amount."

There is no evidence in the record as to the amounts of income taxes, if any, paid by defendant on the unearned income, or on any income, during any of the years 1949 to 1956, or at all. In the absence of any evidence, we must assume that the "amounts required to be paid" were the amounts, if any, paid by defendant. In the instant action, the record is clear that appellant had in his possession or under his control the income tax returns and other papers which would have shown the amount of taxes, if any, required to be paid by him on the amount of his unearned income. These records were not produced by appellant. The presumption, therefore, is that had such evidence been produced, it would not have helped appellant's case (Code Civ. Proc., § 1963, subd. 5; *Hagy* v. *Allied Chemical & Dye Corp.*, 122 Cal.App.2d 361, 372 [265 P.2d 86]), or it would have operated to appellant's prejudice. (*Hamilton* v. *Madison Auto Sales Co.*, 94 Cal. App.2d 619, 623 [211 P.2d 355].) Without any evidence as to the amount of tax "required to be paid," the trial court could not deduct any amount from the unearned income subject to the supplemental agreement.

Appellant's other specification of error is that the court erred in adopting an unreasonable and unfair construction of the provision of said paragraph 1. that "if . . . the monthly income . . . (unearned) . . . shall exceed twice the amount required at such times to be paid . . . under the agreement and property settlement . . . then the First Party

(appellant) will pay twenty-five per cent (25%) of such excess as long and as often as such excess continues . . . ." The court determined 25 per cent of such excess by deducting twice the amount of child support actually required to be paid and paid during the various years before the children reached their respective twenty-first birthdays. During 1954 and later no child support was required to be paid by said agreement, and the court necessarily deducted only twice zero, or nothing, leaving 25 per cent of the entire unearned income subject to said paragraph 1. This was not error.

Appellant insists that, if the parties intended the agreement to be so enforced, they could have said so. We are persuaded that the parties did so intend and that they did say so. Appellant urges that the meaning given the agreement consisting of the two documents is unreasonable. We think not. Reading them together and in their entirety, it appears that the children during their minority were to receive certain support payments regardless of their source, and, in the event appellant should have received unearned income exceeding twice the amount of support so paid, they would receive 25 per cent of such excess. But, after their respective twenty-first birthdays, they would be entitled to payments only from unearned income. This seems to be the fair and reasonable meaning of the words used by the parties.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.