60 Cal.2d 387 (1963)
385 P.2d 2
33 Cal. Rptr. 610
DOROTHY DiMARCO, Plaintiff and Appellant,
v.
FRANK DiMARCO, Defendant and Respondent.
Docket No. S.F. 20978.
Supreme Court of California. In Bank.
September 19, 1963.
*389 Rebecca Wells Smith for Plaintiff and Appellant.
Garrett & Speier, Dan L. Garrett, Jr., and Henry C. Krivetsky for Defendant and Respondent.
McCOMB, J.
Plaintiff appeals from (1) an order of the trial court holding that a property settlement agreement in a divorce action, made by plaintiff and defendant, was nonintegrated; and (2) rulings denying plaintiff (a) the right to be furnished with copies of defendant's income tax returns, (b) a judicial determination of the sum to which she became entitled by reason of a provision contained in the property settlement agreement providing for increases in periodic payments, and (c) a writ of execution to compel payment of the amount accrued under a sliding scale provision in the property settlement agreement.
Facts: (i) October 3, 1951, plaintiff and defendant entered into a property settlement agreement providing, among other things, that the parties "desire to settle all their respective property and other rights"; that plaintiff was to have the physical custody of the two children of the marriage; that plaintiff was to receive all the household furniture; that defendant was to receive the automobile of the parties, together with "all interest, partnership or otherwise in and to that certain public relations business known as DiMarco-Von Lowenfeldt Associates ... together with all equipment, accounts receivable and assets of whatever kind of said business."
Under the agreement defendant agreed "to pay ... directly to the wife [plaintiff] until her death or remarriage as and for alimony and support money the sum of $150.00 each month" and $100 per month for the support of the two children. Defendant also agreed to pay the premiums on certain insurance policies and pay other bills and expenses of the parties.
The agreement then recited: "All monthly payments herein agreed to be made by the husband, [excepting the support for the children and insurance premiums], shall forever cease immediately upon the remarriage of the wife" and "In the event of an increase from any source in husband's present income of approximately $6,000 annually, net before taxes, then the monthly payments herein provided for ... shall be increased in direct proportion...."
*390 In order to determine defendant's income, the agreement recited: "[H]usband shall during the term of this agreement keep full and accurate books of account of his business and professional activity and furnish to the wife by mail, immediately following the end of each calendar year hereafter, a certified statement by a Certified Public Accountant, of his annual income, and copies of his respective state and federal income tax returns and declaration of estimated income tax return, and such statement and returns shall be deemed prima facie proof of the income of the husband so far as is required for the purpose of this agreement, subject to the right hereby granted, of the wife on written request to have a Certified Public Accountant of her own choice examine the records and books of account of said Frank DiMarco."
The agreement concluded by reciting: "The parties do hereby release each other and relinquish to each other all right of support, alimony or community property rights, including the right to inherit ... except as herein provided, and do accept this agreement ... in full settlement of any and all rights arising out of their marriage, except as herein provided.... This agreement when executed by both shall be admitted in evidence, incorporated in and made a part of any interlocutory divorce decree which may be entered in the proceedings hereinabove referred to...."
(ii) October 10, 1951, plaintiff filed a complaint for divorce against defendant, charging him with extreme cruelty.
(iii) October 18, 1951, the case came on for trial, and an interlocutory decree of divorce was entered, setting forth that plaintiff was entitled to a divorce at the end of one year on the ground of defendant's extreme cruelty. Under the decree, it was ordered (a) that "the Property Settlement Agreement dated October 3, 1951, and filed concurrently herein, be and the same is hereby approved and incorporated in and made by reference a part of this decree ..."; (b) that defendant pay for the support of plaintiff and the minor children the sum of $150 per month for plaintiff and $50 per month for each of the children, as provided in the agreement; and (c) that defendant "do all things agreed to be done by him under the terms of said Property Settlement Agreement." A right was reserved to modify the provisions of the decree for the support of the children only.
(iv) October 20, 1952, a final decree of divorce was entered, declaring "that this Court does hereby approve and *391 confirm and make a part of this decree the provisions of that certain Property Settlement Agreement made and entered into between the parties hereto and executed by them on October 3, 1951" and that "defendant pay as and for the support of the said plaintiff and the said minor children, the sum of $150.00 per month for plaintiff, and $50.00 per month for each of said minor children, as provided for in said Property Settlement Agreement, and do all things agreed to be done by him under the terms of said Property Settlement Agreement, reserving to the Court, however, the right to modify hereafter provisions for the support of said minor children."
(v) November 16, 1960, plaintiff obtained an order to show cause directed to defendant, seeking an order that execution issue to compel payment of amounts she alleged were due under the final decree of divorce, and asking that defendant be ordered to (a) furnish certified statements of his income for the years 1952 through 1960, (b) permit plaintiff to examine income tax records and books of account of defendant for said years, and (c) pay increased installments under the terms of the decree and the property settlement agreement.
(vi) May 1, 1961, the trial court held the property settlement agreement to be nonintegrated; ruled that plaintiff was not entitled to inspect defendant's income tax returns; ordered that defendant pay plaintiff, in installments, $1,480 found to be owing in arrearage; and denied further relief.

Questions: [1a] First: Was the property settlement agreement between the parties an integrated agreement?

Yes.
[2] (1) An agreement between husband and wife providing that the purpose of the parties is to reach a final settlement of their rights and duties with respect to both property and support, that they intend each provision to be in consideration for each of the other provisions, and that they waive all rights arising out of the marital relationship except those expressly set out in the agreement will be deemed conclusive evidence that an integrated agreement was intended. (Plumer v. Plumer, 48 Cal.2d 820, 825 [6] [313 P.2d 549]; Messenger v. Messenger, 46 Cal.2d 619, 628 [2b, 3b] [297 P.2d 988].)
[3] (2) The absence in a property settlement agreement of any statement that the support provisions constitute reciprocal consideration for the property provisions is not conclusive *392 if there is other proof of the parties' intent. No such statement appears in the property settlement agreement involved in Plumer v. Plumer, supra. (See also Dexter v. Dexter, 42 Cal.2d 36, 43 [9] [265 P.2d 873]; Clark v. Clark, 198 Cal. App.2d 521, 531 [17 Cal. Rptr. 652]; Grolla v. Grolla, 151 Cal. App.2d 253, 259 [10] [311 P.2d 547].)
[4] (3) The fact that support payments may be designated "alimony," while entitled to some consideration in an effort to ascertain the intent of the parties, is not controlling. (Messenger v. Messenger, supra, 46 Cal.2d at p. 625; Grolla v. Grolla, supra, 151 Cal. App.2d at p. 258 [5].)
[5] (4) The fact that a property settlement agreement looks to the future and is geared for revision upwards does not require an inference of severability. (See Bradley v. Superior Court, 48 Cal.2d 509 [310 P.2d 634]; Burr v. Crellin, 159 Cal. App.2d 275 [323 P.2d 830]; Arthur v. Arthur, 147 Cal. App.2d 252, 256 [305 P.2d 171].)
[6] (5) Where a husband and wife have made provisions for support and maintenance an integral part of their property settlement agreement, the support payments will ordinarily have a dual character.
To the extent they are designed to discharge the obligation of support and maintenance, they will ordinarily have the indicia of alimony; but to the extent they represent a division of community property itself, or constitute an inseparable part of the consideration for the property settlement, they are not alimony and accordingly cannot be modified without changing the terms of the property settlement agreement. (Dexter v. Dexter, supra, 42 Cal.2d at p. 41 [4].)
[1b] Applying the foregoing rules to the present case, it is apparent that the property settlement agreement was an integrated one.
It deals with both rights to marital property and rights to support. In it, the parties have set forth that they had insurmountable differences, contemplated a divorce action, and desired "to settle all their respective property and other rights." They have released each other from all claims arising out of the marital relationship except as provided in the agreement. Accordingly, the inference is clear that they intended an integrated agreement. It is unnecessary that the parties expressly recite such an intent when the agreement itself makes the intent clear. (Plumer v. Plumer, supra, 48 Cal.2d at p. 825 [8]; Dexter v. Dexter, supra, 42 Cal.2d at p. 41 [3].)
*393 It was pointed out in Messenger v. Messenger, supra, 46 Cal.2d at page 626 [3a], that if a husband and wife intend that support and maintenance payments required to be made under the terms of an agreement between them will be alimony separable from a division of the property, they would not include in their agreement a waiver by the wife of future support and maintenance other than as provided therein, since an order allowing alimony is subject to revision at any time. As indicated above, such a waiver was included in the agreement between plaintiff and defendant.

[7] Second: Is plaintiff entitled to inspect defendant's business records in order to determine the amount due under the sliding scale provision in the property settlement agreement?

Yes. In the property settlement agreement defendant agreed that plaintiff should have the right to inspect his business records and income tax returns to determine the amount of his income.
The agreement expressly provided that defendant should, during the term of the agreement, keep full and accurate books of account of his business and professional activities and furnish plaintiff by mail, immediately following the end of each calendar year thereafter, a certified statement by a certified public accountant of his annual income and copies of his respective state and federal income tax returns and declarations of estimated income tax, and that such statements and returns should be deemed prima facie proof of the income of the husband so far as necessary for the purpose of the agreement.

[8] Third: Was plaintiff entitled to a determination by the trial court of the amount due her under the terms of the property settlement agreement?

Yes. Clearly, in view of the above conclusions, plaintiff was entitled to such a determination.

[9] Fourth: Was plaintiff entitled to a writ of execution to enforce her rights under the agreement?

Yes. Section 681 of the Code of Civil Procedure provides that the party in whose favor a judgment is given may, at any time within 10 years after the entry thereof, have a writ or order issued for the execution or enforcement of the judgment.[*]
*394 This section has been applied to judgments involving accrued payments under divorce decrees. (Lohman v. Lohman, 29 Cal.2d 144, 150 [173 P.2d 657]; cf. Wolfe v. Wolfe, 30 Cal.2d 1, 3 [2] [180 P.2d 345]; Millard v. Millard, 102 Cal. App.2d 249, 250 [1] [22 P.2d 477] [hearing denied by the Supreme Court].)
There is no merit in the contention that the doctrine of laches was applicable in the present case. Since plaintiff's rights are based upon a judgment for the payment of money, she can, by the terms of section 681 of the Code of Civil Procedure, enforce her rights at any time within 10 years, and she is entitled to do so whether or not the judgment is modifiable. (Cf. Bryant v. Bryant, 161 Cal. App.2d 579, 582 [4] [326 P.2d 898].)
Neither is there any merit in the contention that the issuance of a writ of execution to permit plaintiff to enforce the rights she acquired by the property settlement agreement would cause hardship to defendant. (See Di Corpo v. Di Corpo, 33 Cal.2d 195, 201 [7] [200 P.2d 529].)
The order and rulings herein questioned are reversed.
Gibson, C.J., Traynor, J., Schauer, J., and Tobriner, J., concurred.
PEEK.
I dissent: I cannot agree with the conclusion of the majority opinion that the provisions for support of the wife in the property settlement agreement before us are, as a matter of law, an integral part of the parties' disposition in that agreement of their community property. I would affirm the ruling of the trial court which was based upon conflicting extrinsic evidence (set forth in part, infra) of the parties' intent that the agreement was not integrated. (Messenger v. Messenger, 46 Cal.2d 619, 626-627 [297 P.2d 988]; Fox v. Fox, 42 Cal.2d 49, 52 [265 P.2d 881].)
In Plumer v. Plumer, the case strongly relied upon in the majority opinion, this court affirmed that portion of the order of the trial court which held the agreement there under consideration to be integrated. (48 Cal.2d at pp. 823, 826.) However the court noted that the agreement there in question contained a modification provision that "Both parties concede[d]... provides for modification of the court's support orders," but that the parties could not agree upon the construction to be placed upon the paragraph. (48 Cal.2d at p. 826.) The court held that the "plain language" of the provision *395 indicated the parties contemplated modification upon a proper showing, and held: "We conclude, therefore, that upon a proper showing of a material reduction in defendant's income, the trial court may in its judicial discretion modify its order requiring payments for the support of plaintiff and the child." (P. 826.) In other words under the terms of the agreement modification was a fact question for the trial court to decide.
Furthermore in this regard it should be noted that the portion of the opinion in Plumer relied upon by the majority appears in a general discussion by the court wherein the problems inherent in this type of case are set forth at length. It seems to me that to properly evaluate the court's discussion consideration must be given to the strong indication that such an agreement must contain as a general rule three provisions before the agreement alone and by itself "will be deemed conclusive evidence that the parties intended an integrated agreement." (Italics added.) Those provisions were said to be: (1) a recital that it is the purpose of the parties to secure a final settlement of respective rights and duties concerning both property and support rights; (2) that the provisions for payments to the spouse are in consideration for the agreed-upon division of the community property; and (3) that the parties waive all rights arising from their marital relationship except as spelled out in the agreement. (48 Cal.2d at p. 825 [6].)
While the agreement before us contains recitals which fulfill the requirements of the first and third elements as stated, it is wholly devoid of any mention that the provisions for support of the wife are in consideration for the division of the community assets. This is the element emphasized by the cases and the commentators to be the core of the legal concept of a contract between spouses where periodic payments in the nature of support cannot be later modified by the court because those payments are accepted in exchange for a negotiated division of the community assets.[1] Indeed it *396 was stated by this court in the Plumer case that "An agreement is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property." (48 Cal.2d at p. 824.) There are similar indications of the importance of an "in consideration" clause in Adams v. Adams, 29 Cal.2d 621, 625 [4] [177 P.2d 265], and Messenger v. Messenger, supra, 46 Cal.2d 619, 626, 627-628. (See 31 So.Cal.L.Rev. 287, 300-301 (1958); 34 State Bar J. 590, 591 (1959).) Furthermore it was held in Pearman v. Pearman, 104 Cal. App.2d 250, 254 [231 P.2d 101], that "The fact that the agreement recites it is in full settlement [as herein] and releases the husband of all further claims [a waiver clause as in the agreement before us] does not preclude the court from inquiring into and determining whether the monthly payments are `property' or `alimony.'"
Of course such agreements must be construed as a whole (Clark v. Clark, 198 Cal. App.2d 521, 529 [17 Cal. Rptr. 652]), and as noted in the majority opinion integration of the support provisions has been found in those cases cited even in the absence of a recital that the payments were in consideration for a property division, where there was other evidence of the parties' intent.
Thus in Dexter v. Dexter, 42 Cal.2d 36, 43 [265 P.2d 873], there was an equal division of the property (see Kelley v. Kelley, 151 Cal. App.2d 228, 234 [311 P.2d 90], supporting the trial court's denial of the wife's request for modification of the payments, and in Plumer v. Plumer, supra, 48 Cal.2d 820, 826, the payments were to continue for five years regardless of the wife's remarriage, the classic situation of periodic payments in lieu of a larger initial share of community *397 property. Also in the Plumer case the parties had inserted a clause allowing future modification upon changed circumstances, further evidence of intent that the agreement itself be integrated. In Clark v. Clark, supra, 198 Cal. App.2d 521, 528-529, 532, the payments also were to continue at a certain amount for a specified time, and the agreement recited that the parties were in doubt concerning the nature and extent of their community property (see Dexter v. Dexter, supra, 42 Cal.2d 36, 43). Grolla v. Grolla, 151 Cal. App.2d 253, 257 [311 P.2d 547], likewise relied upon in the majority opinion, was a situation where the community property was divided so that the husband received a substantial amount thereof, thus indicating consideration in fact for his promise to make payments to the wife and supporting the trial court's refusal to increase the payments at her request.
The majority opinion particularly emphasizes and relies upon that portion of the agreement before us reciting that "The parties do hereby release each other and relinquish to each other all right of support, alimony or community property rights, including the right to inherit, which she or he may have had or now have against each other by virtue of their marriage except as herein provided, and do accept this agreement, if fully performed by both parties, in full settlement of any and all rights arising out of their marriage, except as herein provided, ..." Admittedly in other circumstances as in the Plumer, Dexter, Clark, and Grolla cases heretofore discussed, the respective agreements were held to be integrated partly because of the presence of such waiver and "final settlement" clauses. But the provisions presently under discussion purport to waive or release only rights which the parties "may have had or now have", and to effect a "full settlement of any and all rights arising out of their marriage." The waiver clause is cast in the past and then present, rather than the future tense, and the final settlement provision can be interpreted to express their intent to settle only those "rights arising" prior to execution of that agreement.
There is no release of future claims as in the Plumer case (see 48 Cal.2d at p. 822), nor does the agreement emphasize finality as in Campbell v. Campbell, 178 Cal. App.2d 77, 80-81 [2 Cal. Rptr. 710], where the parties stated that they were "`desirous of forever settling their respective rights and duties relative to ... the support and maintenance of the Wife ...'" and they waived claims in the other party's *398 income "`from this date on....'" The instant agreement also differs in its mode of finality of expression from that in Ebert v. Ebert, 185 Cal. App.2d 293, 296, 299 [8 Cal. Rptr. 203] (executed in 1951, eight days before the instrument at bar), where the parties stated a desire to settle property rights from the marital relationship "`once and for all,'" and to compensate the wife "`for any and all ... maintenance or support'" which she might seek "`in any court proceeding of any kind whatsoever, or otherwise, now pending, or which might be hereafter commenced.'" The parties in Baker v. Baker, 192 Cal. App.2d 730, 734 [13 Cal. Rptr. 772], in contrast to the situation before us, also unmistakably looked to the future and expressly provided "`That neither alimony nor child support shall be subject to increase or decrease by virtue of change of circumstances for either party, and that neither party will apply therefor.'"
The foregoing cases demonstrate that when the parties and their attorneys do contemplate the problem of future increases or reductions in support payments arising from property settlement agreements and form an intent to allow or prohibit modification thereof, such an intent concerning the future, in contrast to the situation before us, easily can be expressed in a "once and for all" type of provision.
The majority opinion in various numbered paragraphs also mentions certain elements which although often included in such agreements are not necessarily controlling. But what that opinion fails to add is that such matters while not controlling when considered alone are nonetheless evidentiary. Thus the provision whereby Frank stated that he would, in effect, pay until his wife's death or remarriage 30 per cent of his income before taxes "as and for alimony and support money", and an additional 20 per cent of his income as support for the two children, a total commitment of 50 per cent of his present and future income before taxes (regardless of his future remarriage or other financial commitments), is evidence of or at least subject to the inference that the agreement contemplated a continuance of the marital obligation of support, rather than its termination. (See Kelley v. Kelley, supra, 151 Cal. App.2d 228, 234-235.) Such a provision, by the very severity and rigidity of the expressed financial obligation assumed by the husband,[2] seems to look *399 toward modification by the court in the event of the parties' (and particularly Frank's) changed circumstances as with alimony payments. (Civ. Code, § 139.)
The cases cited in the majority opinion for the proposition that such provision for adjustment upward does not require an inference of severability all represent distinguishable legal situations. Bradley v. Superior Court, 48 Cal.2d 509, 513-514 [310 P.2d 634], involved payments geared to income in the context of an agreement stated to "`refer only to property rights,'" and there was no discussion of whether that flexible clause required an inference of severability. Nor was any possible inference of severability because of payments tied to income discussed in Burr v. Crellin, 159 Cal. App.2d 275 [323 P.2d 830], or Arthur v. Arthur, 147 Cal. App.2d 252 [305 P.2d 171].
Furthermore, the exceptional financial obligation imposed upon the husband was assumed for what appeared at the time to be virtually no consideration in fact. (See Pearman v. Pearman, supra, 104 Cal. App.2d 250, 254.) Except for a few personal effects, Dorothy appears to have received all of the tangible community property, with the exception of a three year-old automobile in which the parties' joint equity was estimated, by Frank's attorney in the present proceeding, to be $200. Admittedly Frank was awarded the business which subsequently, apparently through his efforts, has shown substantial profits. But at the time of the agreement he was earning only $6,000 per year gross from the business. Thus in return for giving up all tangible community property excepting a $100 interest in an automobile, Frank received the "right" to continue to employ his own abilities and personality in a business which had virtually no assets over and above such personality factors. For this "right" he was indefinitely obligated to pay 50 per cent of his income before taxes to his former wife and his children.
While it has been indicated that the amount or manner of division of the community property may in some situations be unimportant in determining the question of severability of support provisions (see Plumer v. Plumer, supra, 48 Cal.2d *400 820, 824), the allocation of community property can be a relevant consideration in determining integration. (Kelley v. Kelley, supra, 151 Cal. App.2d 228, 234; see Herda v. Herda, 48 Cal.2d 228, 233 [308 P.2d 705].) Consideration of respective amounts received seems entirely proper, since nonmodifiable periodic payments in lieu of support appear to have originated in the situation where a party, usually the wife, exchanges a lump sum payment for community property in exchange for periodic payments for those assets. (See Adams v. Adams, supra, 29 Cal.2d 621, 625-626.)
Presented with such provisions of this agreement which cast doubt on the wife's assertion of integration, in my opinion it was entirely proper for the trial court to hear extrinsic evidence of the parties' intent. The testimony by Dorothy included the following: "Q.: Before you went into the attorney's office did you discuss the terms of the separation? A.: No, only that I would have the children. Q.: There was no discussion of alimony and support? A.: No, no. Q.: Was there a discussion of how the property should be divided? A.: Well, what we had, I was to have all except a few little things. Q.: And how about the business? A.: That was discussed by Mr. DiMarco and myself. Q.: Was it discussed in the lawyer's office? A.: Yes. Insofar as the car that we had that belonged to the business, that I would not claim the car as joint property. Q.: Was it discussed as to who should have the business? A.: Not in words like that, not that the business was at issue. Q.: Oh, no one said anything about who should have it, in your presence? A.: Not that I heard." (Italics added.)
Later Dorothy was asked: "You discussed alimony payments when you were in the lawyer's office, alimony payments?" She responded, "And child support." To a subsequent question: "... What were you thinking of when you mentioned alimony payments in the lawyer's office?", she answered, "Oh, just something for us to live on."
On cross-examination of Dorothy the following occurred: "Q.: You understood that you were getting alimony by reason of this divorce decree, is that correct? A.: Well, let's put it that way: I thought that. Only it was pretty hard to figure out which was child support and which was alimony. Q.: You say that the business of Mr. DiMarco at the time was not at issue. I take it it had no physical assets to your knowledge? A.: The car, the automobile. Q.: And was there a balance owing on the car at the time? A.: I don't know. Q.: *401 To your recollection was Mr. DiMarco making payments on the car to some bank? A.: Well, it would be through the business. Q.: And insofar as you knew, the business had no assets that you wanted? A.: I don't  I didn't know what the business had. Q.: And so far as you know, you didn't give up anything? A.: No, I was primarily concerned with just the furniture and the children. Q.: And you weren't concerned with the business? A.: No. I thought that probably Mr. DiMarco would abide by this." (Italics added.)
Dorothy's testimony was concluded on recross-examination: "Q.: You indicated you gave up any further right to support except for the alimony provided in the agreement? A.: I give up nothing. I would get increases. Q.: Well, you would give up everything except child support? A.: No. Q.: Well, what else would you get? A.: Any increases in direct proportion to Frank's income. Q.: That would be alimony increases in accordance with the terms of this agreement? A.: Well, it would be increases in payments. Q.: Well, right there it says alimony will be paid to you. What did you understand that to mean? A.: Well, at this time Frank wasn't doing too well. That was all he could afford. Q.: So then the answer to my question is yes? A.: Well, it would be increases according to the agreement, when he could have more money, yes." (Italics added.)
While Dorothy's apparent belief that she was certain to receive future increases in payments according to the terms of the "stepladder" clause could point to a conclusion of nonmodifiable payments, her own testimony that she received virtually all of the community assets and gave up nothing in return for 50 per cent of Frank's present and future income before taxes (including the 20 per cent for child support), and her statements to the effect that the business was not considered to have cash value and thus was not worth discussing, weigh heavily in support of the trial court's determination that the payments to Dorothy were in the nature of alimony and severable from the division of community assets.[3]
*402 This court (Schauer, J.) stated in Codorniz v. Codorniz, 34 Cal.2d 811, 815 [215 P.2d 32], in affirming modification by the trial court of support payments, that "`"Had the court found the provisions for support to have been in fact by way of property settlement, then the said provisions could not have been disturbed...." There was ample evidence to support the finding in the instant case and we must therefore accept the same as true.'" The court then stated that the trial court had jurisdiction to determine the question of severability, "and that that court's findings based upon `ample evidence to support' such findings are likewise binding upon an appellate court." (34 Cal.2d at p. 815.) Also in Bradley v. Superior Court, supra, 48 Cal.2d 509, 516, decided as recently as 1957, Mr. Justice Schauer made the following statement in affirming the trial court's interpretation of that property settlement agreement against the appellant-husband's reliance upon the rule that absent conflicting extrinsic evidence the trial court's interpretation was not binding upon this court: "But where, as here, conflicting extrinsic evidence was presented, the quoted rule does not apply. On the contrary, under such circumstances if there is evidence which supports the trial court's interpretation, including inferences which it could reasonably draw, the court on appeal will adhere to the interpretation placed by the trial court on the writings and conduct of the parties. [Citations.] (Italics added.) (48 Cal.2d at p. 516.)
The latter rule, fundamental to appellate review, has been followed in other cases such as Fox v. Fox, supra, 42 Cal.2d 49, 52, Tuttle v. Tuttle, 38 Cal.2d 419, 421-422 [240 P.2d 587], and Sasanoff v. Sasanoff, 120 Cal. App.2d 120, 128 [260 P.2d 840]. It has also been stated in numerous cases to be the rule for review of a lower court determination on the question of integration where conflicting extrinsic evidence is properly offered, including Messenger v. Messenger, supra, 46 Cal.2d 619, 626-627 (see 3 Witkin, Summary of California Law, p. 2678). It necessarily follows that to reverse the trial court where conflicting extrinsic evidence supports its implied *403 finding is clearly contrary to established law. Nor in my opinion is it correct to treat the interpretation of the present agreement as a straight matter of law to be resolved from the face of the instrument itself, impliedly holding as does the majority opinion that receipt of extrinsic evidence of intent was error.
Additional factors supporting the determination of the trial court to hear extrinsic evidence of the parties' intent and its holding of severability are that payments to Dorothy are stated in the agreement to be "as and for alimony and support money," and payments are expressly stated to terminate on Dorothy's death or remarriage. (See Kelley v. Kelley, supra, 151 Cal. App.2d 228, 235.) While such designations or provisions might be immaterial in other contexts (see Plumer v. Plumer, supra, 48 Cal.2d 820, 824-825), they are worthy of consideration herein where the husband is seeking relief from the agreement by modification or elimination of the "stepladder" provisions and the agreement was drafted by the wife's attorney.[4] Uncertainties in such agreements are construed most strongly against the spouse who caused the instrument to be drafted. (Grolla v. Grolla, supra, 151 Cal. App.2d 253, 260; see 3 Witkin, Summary of California Law, p. 2678; 31 So.Cal.L.Rev. 287, 300.) Because the agreement is at least ambiguous on the question of severability the latter rule supports the trial court both in its determination to hear extrinsic evidence and its decision to hold the husband for past arrearages at the rate of $250 per month as the total amount due, thus modifying the agreement by eliminating the provisions obligating Frank to pay 50 per cent of all future income to his former wife and his children.
In my opinion the trial court with the aid of properly received and amply sufficient extrinsic evidence of the parties' intent could well determine, as it did, that the support provisions herein were severable from the division of community property, and since the reversal of that finding is contrary to the fundamental principal that a determination on severability based upon conflicting extrinsic evidence is binding upon an appellate court, I would affirm the judgment.
Peters, J., concurred.
*404 Respondent's petition for a rehearing was denied October 16, 1963. Peters, J., and Peek, J., were of the opinion that the petition should be granted.
NOTES
[*] Section 681 of the Code of Civil Procedure provides: "The party in whose favor judgment is given may, at any time within 10 years after the entry thereof, have a writ or order issued for the execution or enforcement of the judgment...."
[1] The basic principles affecting severability have been lucidly set forth by Mr. Justice Tobriner in Carson v. Carson (1960) 179 Cal. App.2d 665, 669 [4 Cal. Rptr. 38], where the following statement was made in explaining why alimony payments are modifiable and payments for community assets may not be altered: "The obligations which arise between husband and wife are by no means merely consensual; the California courts have long recognized the `concept of marriage as a legal institution' [citation] which is reflected in the California Civil Code, section 55; `[t]he contract is a portal through which the parties enter into the relation of marriage ...' [citation]. `The relation once formed, the law steps in and holds the parties to various obligations and liabilities.' [citations.] Since the law fixes the extent of the obligation of support, that power of the court continues even if the parties themselves have agreed upon the amount of alimony and included it, among other and separable provisions, in a property agreement. [Citations.] On the other hand, the court has no power to change the terms of a property settlement agreement that relates only to the division of the property. [Citation.] Hence if in the agreement the provision for support is exchanged for a share of the community property, the agreement constituting an integrated all-embracing bargain, the court cannot modify its terms. To do so would be to use the parties' discarded support provision to reach the area of property disposition, an area into which the courts would not otherwise venture." (Italics added.)
[2] It appears that Frank has remarried and has three children by his present wife. Also, his present wife has become a near-total invalid requiring extensive care and treatment, and he contributes to the support of an aged parent. Frank's current gross salary appears to be approximately $18,000 per annum, before taxes, of which Dorothy is claiming one half, approximately $5,400 support for herself and $3,600 for her two boys according to the terms of the "Property Settlement Agreement." The court mentioned during the hearing below that Frank's arrearages under the terms of the agreement might total $36,000 (as of May 1961).
[3] It also seems significant that at one time Dorothy's counsel apparently believed the agreement severable and the payments to be in the nature of alimony. At the outset of the present controversy (November 1960) Frank was served with an order to show cause why he `should not be declared in contempt of court and punished accordingly for disobedience of" the interlocutory and final divorce decrees of the court which incorporated the property settlement agreement and its support provisions. Contempt proceedings are proper for delinquency with respect to "[p]ayments which fall into the category of law-imposed alimony", but it is well established (and presumably well known among practitioners of California marital law) that contempt is forbidden for breach of a contractual obligation of support arising from an inseverable part of an integrated adjustment of the marital property rights of the parties. (Bradley v. Superior Court, supra, (1957) 48 Cal.2d 509, 522-523; see Hull v. Superior Court, 54 Cal.2d 139, 144-145 [5 Cal. Rptr. 1, 352 P.2d 161].)
[4] While the law firm with which Dorothy's counsel was associated apparently had performed services for Frank's business, and Frank secured Dorothy's attorney from that firm, it appears that in drafting the agreement the attorney represented Dorothy only. Frank was not otherwise represented by counsel.