[Civ. No. 22592. First Dist., Div. One. Mar. 24, 1966.]

FAYE ROBERTS, Plaintiff and Appellant, v. ERNEST ROBERTS, Defendant and Respondent.

Mullin & Cost and Parker S. Kelly for Plaintiff and Appellant.

William W. Penaluna, Hugh F. Mullin, Jr., and Allan J. Bollhoffer for Defendant and Respondent.

SULLIVAN, P. J.—This is an appeal by plaintiff Faye Roberts from an order denying her motion to modify an order discharging an order to show cause in a divorce action. It is presented on a record consisting of an agreed statement and a clerk's transcript. (Cal. Rules of Court, rule 6.)[1]

We set forth the following chronology of procedural events leading up to the instant appeal: On *December 7, 1955,* plaintiff filed in the court below her complaint for separate maintenance and on January 3, 1956, defendant filed his answer thereto and a cross-complaint for divorce. On *August 30, 1956,* during the pendency of such proceedings, plaintiff and defendant entered into a property settlement agreement. After reciting "their mutual desire to effect a final and complete settlement of their respective property rights with reference to their marital status and to each other," this document set forth *inter alia* the following provision: "Husband shall pay to wife for her support and maintenance One Hundred Seventy-five Dollars ($175.00) a month, payable on the 1st day of each month commencing with the 1st day of August 1956 and continuing until wife dies or remarries."

On October 22, 1956, the case was heard on the uncontested calendar and plaintiff was granted an interlocutory decree of divorce on the grounds of defendant's extreme cruelty.[2] Said decree approved and incorporated by reference the above-mentioned property settlement agreement. It also expressly ordered "pursuant thereto" that defendant pay $175 per month for plaintiff's support and maintenance. No appeal was taken from the interlocutory decree. Final judgment of divorce was filed on October 24, 1957.

On *April 13, 1960* defendant obtained issuance of an order to show cause why the interlocutory and final judgments should not be modified by reducing the monthly payments for the support and maintenance of plaintiff from $175 to $75.

---

[1]Defendant's motion to dismiss the instant appeal on the ground that the order in question was not appealable was denied by this court without written opinion on March 23, 1965. Defendant filed no petition for hearing in the Supreme Court. Our foregoing order constitutes a final determination on the question of appealability. (See *Pigeon Point Ranch, Inc.* v. *Perot* (1963) 59 Cal.2d 227, 230-231 [28 Cal.Rptr. 865, 379 P.2d 321] and cases there cited.)

[2]Pursuant to a written stipulation between the parties, the cause came on for hearing on plaintiff's amended complaint for divorce and defendant's answer thereto, defendant having dismissed his cross-complaint with prejudice and the parties having waived findings of fact, conclusions of law and notice of entry of judgment.

Plaintiff urged that the modification be denied on the ground that the payments rested upon a private contract not subject to modification by the court. On *June 10, 1960* the court discharged the order to show cause, its minute order of that date stating: ''The Order to Show Cause re modification of divorce decree having been heretofore submitted to the Court for consideration and decision, and now the Court, having considered the same and being fully advised, renders the following decision: 'The Court is of the opinion that it does not have the power to modify the decree in view of the provisions of the property settlement agreement. The Order to Show Cause is discharged. Dated June 10, 1960. J. A. Branson, Judge of the Superior Court.' ''[3] It will be noted that the foregoing order does not expressly direct that a written or formal order be prepared, signed or filed.

Over four years later, counsel for defendant prepared, submitted to plaintiff's counsel for approval and submitted to the court for signature a formal order entitled ''Order Discharging Order to Show Cause.'' This order was ''approved as to form'' by plaintiff's counsel, signed by Judge Branson on June 8, 1964, and filed in the case on *June 10, 1964*. It seems clear that defendant's purpose in so doing was to establish a record available for use in defendant's bankruptcy proceedings that the monthly payments to be made to plaintiff were not in the nature of alimony and were therefore obligations properly dischargeable in bankruptcy.

The above-mentioned 1964 formal order, after the usual preliminary recitals, states: ''IT IS FOUND BY THIS COURT AS FOLLOWS: 1. That the property settlement agreement incorporated into the Interlocutory and Final Decrees of Divorce of these parties provided, among other things, for monthly payments of One Hundred Seventy Five Dollars ($175.00) by defendant to plaintiff; that said payments are not in the nature of alimony, but are contractual and a part of the division of property of the parties, and that as a result, this Court does not have the power to modify the described provisions of the property settlement agreement as incorporated in said decrees; IT IS THEREFORE THE ORDER OF THIS COURT: 1. That the provisions of the Interlocutory and Final Decrees of Divorce herein relating to monthly payments of One Hundred Seventy Five Dollars ($175.00) constitute a division of prop-

---

[3]The record contains a memorandum of decision signed by the Honorable J. A. Branson and filed on the same day. The last portion of the minute order appears to have been quoted from the above memorandum.

erty and not alimony, and are not subject to modification by this Court. 2. That the Order to Show Cause referred to herein is hereby discharged.''

On *September 11, 1964,* plaintiff, apparently concerned about the discharge of the monthly payments in bankruptcy (see *Yarus* v. *Yarus* (1960) 178 Cal.App.2d 190, 195 [3 Cal. Rptr. 50]), moved to modify the court's formal order of June 8, 1964, on the ground that it did not accurately reflect the court's decision made on June 10, 1960, and that although it had been approved as to form by plaintiff's counsel ''said approval was given by mistake and inadvertence, without due regard for the legal subtleties and distinctions to be grasped from the words'' of the order. It is to be noted that plaintiff did not seek to *vacate* the 1964 order but merely to *modify* it so as to read in accordance with a *new* formal order proposed by plaintiff.[4] Defendant opposed such modification on the grounds that in discharging the order to show cause in June 1960, the court ruled in plaintiff's favor on the basis of arguments then presented by her that the monthly payments were not in the nature of alimony but were contractual and a part of the division of property; and that plaintiff's counsel approved the 1964 order with full knowledge that the real issue involved was whether the obligation was dischargeable in bankruptcy. On October 2, 1964, Judge Branson denied plaintiff's motion to modify. This appeal followed.

Plaintiff's contentions on appeal may be summarized as follows: (1) that the trial court abused its discretion in not modifying the formal order on the grounds of the mistake and excusable neglect of plaintiff's counsel; (2) that the proceedings had become final prior to the signing and filing of the formal order; and (3) that the formal order of June 8, 1964, is void. We have concluded that the last contention, which is

---

[4]After preliminary recitals the proposed modification reads: ''It Is Found By This Court as Follows: 1. That the property settlement agreement incorporated into the Interlocutory and Final Decrees of Divorce of these parties provided, among other things, for monthly payments of One Hundred Seventy Five Dollars ($175.00) by defendant to plaintiff: That Said Payments May Not Be Modified for the Reason That the Court Does Not Have the Power to Modify the Interlocutory Decree of Divorce In View of Provisions of the Property Settlement Agreement. It Is Therefore the Order of This Court: 1. That the Provisions of the Interlocutory and Final Decrees of Divorce Herein Relating to Monthly Payments of One Hundred Seventy-Five Dollars ($175.00) Are Not Subject to Modification By This Court. 2. That the Order to Show Cause referred to herein is hereby discharged.''

the principal one made before us, has merit and that the order appealed from should be reversed. In view of this conclusion we need not discuss the other points raised on appeal.

The record reflects that plaintiff did not assert the nullity of the order in the court below. Defendant adverts to this but does not challenge plaintiff's right to urge the point on appeal. ■ While it is a settled rule of appellate review that points not raised in the trial court will not be considered on appeal (*Damiani* v. *Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780]; *Cope* v. *Cope* (1964) 230 Cal.App.2d 218, 234 [40 Cal.Rptr. 917]; *Hearst Publishing Co.* v. *Abounader* (1961) 196 Cal.App.2d 49, 58 [16 Cal.Rptr. 244]; *Buckley* v. *Savage* (1960) 184 Cal.App.2d 18, 32 [7 Cal.Rptr. 328], cert. denied 366 U.S. 910 [81 S.Ct. 1086, 6 L.Ed.2d 235]; 3 Cal.Jur.2d 604) and while, as a corollary to the above rule, a party must adhere on appeal to the theory upon which the case was tried below and cannot for the first time on appeal adopt a new and different theory (*Ernst* v. *Searle* (1933) 218 Cal. 233, 240-241 [22 P.2d 715]; *Gibson Properties Co.* v. *City of Oakland* (1938) 12 Cal.2d 291, 298-299 [83 P.2d 942]; *Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 340-341 [303 P.2d 738]), nevertheless, an exception to the last rule exists and where the newly advanced theory presents, as it does here, only a question of law arising on agreed facts, a change of theory is permitted on appeal (*Tyre* v. *Aetna Life Ins. Co.* (1960) 54 Cal.2d 399, 405 [6 Cal.Rptr. 13, 353 P.2d 725]; *Burdette* v. *Rollefson Construction Co.* (1959) 52 Cal.2d 720, 725-726 [344 P.2d 307]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; *Panopulos* v. *Maderis, supra,* at p. 341.) We therefore proceed to a consideration of the question whether the formal order is void.

■ As the Supreme Court noted in *Hayashi* v. *Lorenz* (1954) 42 Cal.2d 848, 851 [271 P.2d 18] quoting from *In re Dahnke* (1923) 64 Cal.App. 555, 560 [222 P. 381]: "It is well settled that a judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion at any time after its entry, by the court which rendered the judgment or made the order. [Citations.]" (See cases there collected. In accord: *Wettstein* v. *Cameto* (1964) 61 Cal.2d 838, 840 [40 Cal.Rptr. 705, 395 P.2d 665]; *Myers* v. *Washington* (1963) 211 Cal.App.2d 767, 771 [27 Cal.Rptr. 778].) This court has had occasion in the past to point out that a void order is never binding and is but "a dead limb on the judicial

tree'' which can be lopped off at any time. (*Macmillan Petroleum Corp.* v. *Griffin* (1950) 99 Cal.App.2d 523, 533 [222 P.2d 69]; *Svistunoff* v. *Svistunoff* (1952) 108 Cal.App.2d 638, 641 [239 P.2d 650]; *Brady* v. *Superior Court* (1962) 200 Cal.App. 2d 69, 73 [19 Cal.Rptr. 242]; *Grant* v. *Superior Court* (1963) 214 Cal.App.2d 15, 19-20 [29 Cal.Rptr. 125].)

A comparison of the pertinent minute order of June 1960 and of the formal order of June 1964 shows: (1) Under the former, the order to show cause was discharged on the basis that the court did not have the power to modify the decree of divorce in view of the provisions of the property settlement; under the latter, the court in addition to ''finding'' substantially as above, ''found'' that the pertinent monthly payments were not in the nature of alimony but were contractual and a part of the division of property of the parties. (2) The minute order contained no further provision except that directing the discharge of the order to show cause; the formal order, in addition to discharging the order to show cause, contained an ''order'' that the monthly payments constituted a division of property and not alimony, reiterating that they were not subject to modification. (3) Completely omitted from the apparently more detailed formal order is any statement of or reference to the actual language of the provision for the payments to the wife, namely that they are ''for her support and maintenance.''[5]

To put it another way: The 1960 minute order denied a reduction of monthly payments to the wife on the sole basis that the property settlement agreement could not be modified. No appeal was taken from this order and it became final. The 1964 formal order not only denied such reduction on the above basis but also went further and provided that the payments were not in the nature of alimony, were contractual and constituted a division of property, at the same time omitting all reference to the fact that they had been expressly designated to be for the support and maintenance of the wife.

It is obvious that in 1960 the court below denied the reduction in monthly payments because it concluded that the property settlement agreement was integrated and therefore not subject to modification. (*Dexter* v. *Dexter* (1954) 42 Cal.2d 36, 40-41 [265 P.2d 873] and cases cited therein; *Flynn* v. *Flynn* (1954) 42 Cal.2d 55, 60-61 [265 P.2d 865]; *Messenger* v. *Messenger* (1956) 46 Cal.2d 619, 628 [297 P.2d 988];

---

[5]This same language appears in the interlocutory decree of divorce.

100

*Plumer* v. *Plumer* (1957) 48 Cal.2d 820, 823-825 [313 P.2d 549]; *DiMarco* v. *DiMarco* (1963) 60 Cal.2d 387, 391-392 [33 Cal.Rptr. 610, 385 P.2d 2].) We are not necessarily called upon to decide this particular point herein, but if we were, we would come to the same conclusion. See in particular *Di Marco* v. *DiMarco, supra*; *Roberts* v. *Roberts* (1964) 226 Cal. App.2d 507 [38 Cal.Rptr. 176].) ▮ A property settlement agreement may be of the "hybrid" type in which the parties settle not only property rights but rights to support and maintenance. (*Plumer* v. *Plumer, supra*; *Dexter* v. *Dexter, supra*; *Adams* v. *Adams* (1947) 29 Cal.2d 621, 624-625 [177 P.2d 265].) ▮ Such an agreement "is integrated if the parties have agreed that the provisions relating to division of property and the provisions relating to support constitute reciprocal consideration. The support provisions are then necessarily part and parcel of a division of property." (*Plumer* v. *Plumer, supra*, 48 Cal.2d 820, 824; *DiMarco* v. *DiMarco, supra*.) ▮ In such a situation the support payments will ordinarily have a dual character. "To the extent they are designed to discharge the obligation of support and maintenance, they will ordinarily have the indicia of alimony; but to the extent they represent a division of community property itself, or constitute an inseparable part of the consideration for the property settlement, they are not alimony and accordingly cannot be modified without changing the terms of the property settlement agreement." (*DiMarco* v. *DiMarco, supra*, 60 Cal.2d 387, 392; *Dexter* v. *Dexter, supra*, 42 Cal.2d at pp. 41-42.) ▮ It is not necessarily repugnant to an integrated agreement that it designates payments as "support" or "support and maintenance" or "alimony." (*Plumer* v. *Plumer, supra*; *DiMarco* v. *DiMarco, supra*.) ▮ The point we make is this: that an integrated property settlement agreement may have provisions relating to support and maintenance and yet remain immune to modification.

▮ As we noted above, the trial court, upon making its formal order four years after its discharge of the order to show cause, purported to add to its earlier decision which was already final by providing that the monthly payments were not in the nature of alimony but were a part of the division of property and by eradicating at the same time the designated characteristic of the payments as being for support and maintenance. Actually, the formal order in effect purported to change the property settlement agreement itself and the interlocutory decree which was final by stripping the payments of their

"support and maintenance" features. The court disposed of the order to show cause in 1960 and made its minute order on such disposition. The minute order did not direct that a written order be filed. Thus, the minute order became final and the court was finished with the matters embraced therein. We think that when it made its formal order in 1964 it acted in excess of its jurisdiction and that such formal order is void. If the court was then without jurisdiction to act, it is of no importance that counsel for the parties stipulated to the order, since they could not confer jurisdiction on the court by consent. (See *Bacigalupi* v. *Bacigalupi* (1925) 72 Cal.App. 654, 659 [238 P. 93]; *Gillespie* v. *Andrews* (1926) 78 Cal.App. 595, 598 [248 P. 715]; *Baxter* v. *Baxter* (1935) 3 Cal.App.2d 676, 686 [40 P.2d 536]; *Grant* v. *Superior Court, supra,* 214 Cal. App.2d 15, 20-21.)

As we have said, we are not presently concerned with the question whether the agreement of the parties was integrated or not, or with the question whether the payments provided for the wife therein are dischargeable in bankruptcy or not. The latter question particularly will have to be decided in other proceedings and probably in another forum. All we say is that the court should have left as they were the interlocutory decree and the 1960 minute order, both of which were final. It is true that plaintiff did not move below to *vacate* the 1964 order but only to modify it by in effect substituting a second formal order. This added nothing to the minute order so that the motion to modify was tantamount to one to vacate. In any event, even if we limited relief to that sought below, we feel that plaintiff, if so advised, could file a new motion to vacate the void order which is her declared objective on appeal. We see no good reason for encouraging such circuity of procedure; on the contrary it makes good sense to avoid it.

The order appealed from is reversed and the cause is remanded to the trial court with directions to vacate and set aside its "Order Discharging Order to Show Cause" signed on June 8, 1964, and filed in said action on June 10, 1964.

Molinari, J., and Sims, J., concurred.