[Crim. No. 5743. In Bank. Feb. 1, 1956.]

THE PEOPLE, Respondent, v. BART LUIS CARITATIVO, Appellant.

George T. Davis and Cyril Viadro, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, William O. Weissich, District Attorney (Marin), and E. Warren McGuire, Deputy District Attorney, for Respondent.

McCOMB, J.—This is an automatic appeal from a judgment of guilty on two counts of murder after trial before a jury.

Viewing the record in the light most favorable to the People, it discloses that on September 16, 1954, Mr. and Mrs. Banks were in their cabin at Sea Downs packing their belongings in preparation for a trip by Mrs. Banks to Ceylon. On September 17 a friend called to visit Mrs. Banks at 9 a. m. and received no response although Mrs. Banks' automobile was at the cabin. That afternoon the friend returned about 3:40 p. m. and discovered Mrs. Banks' dead body lying face down on her bed. Her neck was a bloody pulp and everything around was bloody. Blood was spattered on the wall and ceiling. She had died as a result of a concussion of the brain due to a fracture of the skull. There were four wounds on her head, two on the right side and two on the back. In an adjacent room was found the body of Mr. Banks. He was lying on his back with his feet on the floor and a knife was buried in his chest. The only blood on Mr. Banks was that in the immediate vicinity of the knife wound. He had died as a result of this wound, the knife having penetrated the right lung, passed into the right auricle of his heart causing a hemorrhage of a quart of blood in the right chest cavity. At the time of his death he had a .437 per cent alcohol by weight in his blood which is above the minimum lethal dose and would have rendered

him unconscious, since he had a below average tolerance for alcohol.

On his dresser was found a hammer and a partially empty bottle of Millshire Hueblein Gin. The hammer contained traces of the same type of blood as Mrs. Banks' and hairs identical to the hair of her head. On the floor was an empty bottle of "Fiscal Agent" whiskey, and on a table in the bedroom a note which read:

"I had been pushed long enough. This is the end. Am responsible to what you see and find.

Joseph Banks."

This note had been written by defendant.

In another locked cabin, among Mrs. Banks' personal effects was discovered a purported holographic will, dated September 1, and a codicil, dated September 7. The will left Mrs. Banks' property to defendant. The codicil, a typewritten unwitnessed document purportedly signed by Mrs. Banks, provided for specific bequests to the mother of the victim, to the Stinson Beach Community Center, to Mrs. Banks' accountant, and to an elderly neighbor of the deceased. The purported holographic will had been written by defendant, as had the signature on the purported codicil to the will.

Defendant was on friendly terms with the decedents, having been to their cabin on business and social affairs. He had been drinking with them in a local bar about a week before the murders and had assisted Mrs. Banks pack for her trip. The ink used to write the purported will was identical to ink found in defendant's pen and in a bottle of ink in his room. The stationery upon which the will and codicil had been written was identical to that which defendant had in his possession. No similar paper was found among decedent's effects. The suicide note was also written on paper similar to that in defendant's room.

Defendant was employed by the Lansburghs, who were the only persons in Stinson Beach who purchased "Fiscal Agent" whiskey and Millshire Hueblein Gin, which could be obtained only at one liquor store in the community. In the Lansburghs' home at Stinson Beach there were bottles of the above mentioned whiskey. Their home was kept locked and defendant had keys to the house.

The hunting knife which was used to murder Mr. Banks was similar to one which defendant had in his possession at Clear Lake on May 9, 1953, and a scabbard found by the

body was like one possessed by defendant. A pair of defendant's trousers contained traces of unidentified blood.

Defendant relies for reversal of the judgment on these grounds:

First: *The evidence was insufficient to sustain the judgment.*

This contention is devoid of merit. Where there is substantial evidence in support of the jury's determination it must be upheld. (*People* v. *Eggers,* 30 Cal.2d 676, 685 [2] [185 P.2d 1].)

 Applying this rule, it is clear that from the evidence set forth above, the trial jury could properly infer that defendant forged the holographic will so that upon the death of Mrs. Banks he might obtain her property; that he killed Mr. Banks, who was intoxicated, and forged the purported suicide note for the purpose of making it appear that Mr. Banks had killed his wife and then committed suicide.

 The proof of deliberation, premeditation and wilfulness may be inferred from the facts and circumstances which will furnish a reasonable foundation for such a conclusion. (*People* v. *Eggers, supra,* 685 [1] ; *People* v. *Byrd,* 42 Cal.2d 200, 213 [17] [266 P.2d 505].)

 The evidence in the instant case, showing that defendant forged the purported will and codicil as well as the suicide note; had access to Mrs. Banks' personal papers; that his knife was used to murder Mr. Banks; and he had placed liquor bottles, which he had stolen from his employers, at the scene of the murder, all support the jury's finding that defendant deliberately, wilfully and with premeditation murdered the decedents.

Second: *Defendant was convicted on the basis of illegally obtained evidence.*

This proposition is not tenable. Defendant urges that it was error for the trial court to receive in evidence a sheet from a calendar memorandum upon which defendant, in an attempt to simulate the handwriting of Mrs. Banks, had written, "To be opened by Bart Caritativo c/o Mrs. Ethel Lansburgh, on death of Camille Malmgren," because this memorandum was obtained from defendant's room by the police who did not have a search warrant at the time they searched his room on the Lansburghs' estate with the permission of the caretaker and Mrs. Lansburgh, the owner of the property.

 Defendant was living in the Lansburgh home, and whether he was in fact a tenant, servant or guest, Mrs. Lansburgh and the caretaker believed they had joint control over his quarters and the right to enter them and to authorize a search thereof. Under these circumstances, the officers were justified in concluding that Mrs. Lansburgh and the caretaker had the authority over Mrs. Lansburgh's home that she purported to have and there was nothing unreasonable in their acting accordingly. (*People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469].) In the cited case, Mr. Justice Traynor, speaking for this court, said: "when . . . officers have acted in good faith with the consent and at the request of a home owner in conducting a search, evidence so obtained cannot be excluded merely because the officers may have made a reasonable mistake as to the extent of the owner's authority." (P. 783.)

 Defendant also contends that while the court was in recess the district attorney and five of his assistants went to defendant's cell and forced him to try on a pair of pants which had been found in his room. He claims it was error for the trial court to deny his motion to suppress this evidence. There is no merit to this contention. (*Holt* v. *United States,* 218 U.S. 245, 252 [31 S.Ct. 2, 54 L.Ed. 1021].)

Third: *The trial court erred in denying a motion to strike certain testimony of Dr. Moon.*

This contention is likewise not sound. During the course of the trial Dr. Moon was called as an expert witness and testified in response to a hypothetical question that Mr. Banks could not himself have inflicted the knife wound which resulted in his death. He then gave the reasons for his opinion. Thereafter defendant cross-examined the doctor at length upon his opinion and the reasons therefor. He then made a motion to strike the doctor's testimony, which was denied. This ruling was correct.

 The rule is settled that where a defendant deliberately permits evidence to be given without objection in the first instance and then moves to strike it out on grounds readily available at the time the evidence was offered, he waives such objections to the reception of the evidence. (*People* v. *Long,* 43 Cal. 444, 446; *People* v. *Rolfe,* 61 Cal. 540, 542.)

Fourth: *Defendant was denied the aid of counsel during the presentation of his case.*

This contention is untenable. Defendant urges that

he was denied the aid of counsel during one week of trial. The record discloses that such was not the case. At 10 a. m. on Monday, January 10, 1955, defendant asked for "another lawyer in behalf of my case." At no time did he give any reason for desiring a change of counsel other than because of whim and caprice. The request came after the jury had been selected and sworn, after the opening statement of both prosecution and defense and after one day of the reception of evidence. The judge excused the jury, discussed the problem with defendant and his attorneys and suggested that defendant and his attorneys discuss the matter. Another session was held at which time defendant explained that he did not want to change attorneys, and merely desired an additional attorney. He was given until 10 a. m. the following day to contact another attorney.

At 10:20 on January 11, 1955, out of the presence of the jury when the court had convened to consider the matter defendant was allowed to speak to Mr. Davis in regard to the latter's representing him. After this conversation defendant requested permission to change attorneys, assuring the court that if such permission were granted he would have another attorney, for Mr. Davis would act for him. Before any action was taken, Mr. MacInnis made a motion for a mistrial. This motion was denied. The court then refused to rule on the substitution of counsel until defendant had his new attorney in court, defendant's attorney of record at that time having made a motion to withdraw. At 11:20, the jury was convened and recessed after being admonished not to converse with anyone in regard to the case or to form or express any opinion or to read the papers or listen to any statements over the radio or television concerning the case.

At 12:55 p. m. on January 11, 1955, in the absence of the jury the court again met and gave Mr. Davis until the following afternoon to consider whether or not he would accept the case.

At 2 p. m., January 12, 1955, outside the presence of the jury the court again convened. Mr. MacInnis interposed a motion for mistrial which was denied. Mr. Davis in a statement intimated that in his opinion defendant was insane. Based on this statement, Mr. MacInnis made another motion for mistrial, which was denied. Mr. Davis then stated that he had been hired by defendant and intended to file a petition for an alternative writ of prohibition in the District Court of Appeal. Mr. MacInnis again moved for a

mistrial, which was denied. Mr. Davis then refused to become defendant's attorney. The trial judge declined to remove Mr. MacInnis and Mr. Hoffman until such time as defendant obtained a new attorney and granted defendant until the following Friday to obtain services of counsel.

On Friday, January 14, 1955, Mr. MacInnis and Mr. Hoffman were allowed to withdraw as counsel and the court immediately appointed the public defender and Mr. Davis to represent defendant. New counsel requested a continuance until January 25, 1955, which was granted by the court to allow them an opportunity to familiarize themselves with the case.

The record thus discloses that defendant was represented by able counsel during the week about which he complains, and that his rights were fully protected at all stages in the proceedings; that he in fact was not at any time without counsel to represent him.

Defendant has completely failed to prove that he has been denied the effective aid of counsel, nor has he shown that his rights were prejudiced in any manner. An examination of the record discloses that defendant had a full, fair and complete trial, and there is no basis for his contention that the jury's verdict was in any way influenced by comments in the press, over the radio or television.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied February 29, 1956.