Lee Edgar **SARTAIN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 17565.

United States Court of Appeals Ninth Circuit.

May 25, 1962.

---

Donald L. Ungar, Los Angeles, Cal., for appellant.

Herman T. F. Lum, U. S. Atty., Joseph M. Gedan and T. S. Goo, Asst. U. S. Attys., Honolulu, Hawaii, for appellee.

Before ORR, BARNES, and JERTBERG, Circuit Judges.

ORR, Circuit Judge.

Appellant stands convicted on four counts of an indictment charging him with violations of the federal narcotics laws, 21 U.S.C.A. § 174 and 26 U.S.C.A. § 4704(a). He alleges the following as error: (1) the denial by the trial court of his motion for a bill of particulars, (2) the trial court's failure to include on its own motion a special instruction respecting the credibility of a paid government witness, and (3) the refusal to exclude from evidence certain narcotics discovered in appellant's briefcase subsequent to his arrest.

The record reveals the following facts. On June 4, 1959, Honolulu police and federal agents were carrying on a narcotics investigation. On that day Officer Wray Straus of the Honolulu Police Department and Agent William H. Grady of the Federal Bureau of Narcotics met by prearrangement with one Eugene Wallace, a special government employee, on Kalakaua Street in Honolulu. The three men immediately adjourned to a nearby service station where Wallace was thoroughly searched and was found at that time to have no narcotics or money on his person. After he was thus searched, Wallace stepped across Kalakaua Street and entered a bar. Officer Straus and Agent Grady stationed themselves a short distance down the street.

A few minutes thereafter appellant Sartain and another man entered the bar, where Wallace was by that time having a drink. The new arrivals also ordered drinks and sometime during the next fifteen minutes Sartain passed to Wallace a small quantity of heroin in a paper bag. Wallace then left and turned the narcotics over to Officer Straus and Agent Grady. A few minutes later appellant and his companion also left the bar. Based on this transaction Grady secured a warrant for Sartain's arrest and took him into custody on June 6th.

Early on Monday, June 8th, the Honolulu police received a call from the office of local attorney Edward Berman. Berman reported that he had in his possession a briefcase belonging to Sartain in which he had reason to believe the police would be interested. This briefcase had been delivered during the previous week by Sartain to the home of his friend, Jerome Zucker. Sartain had deposited the briefcase, with a key attached to the handle, in one of Zucker's kitchen cabinets. On the Monday morning involved

here, Zucker's maid, a Mrs. Fernandez, read of Sartain's arrest, and remembering the presence of the briefcase, called Zucker, who was then in a hospital, and asked what to do with it. Zucker advised her to "take it right out of the house and take it right down to Mr. Berman's office and let him call the police, if there is something in there." She took the bag to Berman's office, and Berman not being present, she left it with his secretary, a Mrs. Allen. Upon Berman's return the secretary called his attention to the bag, and the police were summoned at once.

When the police and Agent Grady received the briefcase it was still locked, and the key which Sartain had left with it at Zucker's house was not to be found. Unable because of this to unlock the bag, Grady had the flap cut and discovered a large quantity of heroin inside. These narcotics constituted the possession on which the third and fourth counts of the indictment against Sartain were predicated.

■■ Prior to trial, Sartain moved for a bill of particulars, requesting such information as the time of day on which the alleged transactions took place, the exact location of the transactions, the name of the person to whom the alleged sale was made, and similar matters. Some of the requests were for facts which the government neither introduced nor relied on at the trial, and hence the refusal to require a bill of particulars as to them was not prejudicial. The other requests made relate to matters which are of such a nature that the trial court's denial of them is not shown to have hampered the appellant in the preparation of a relevant defense. This court's recent decision in the case of Williams v. United States, 289 F.2d 598 (9th Cir. 1961), points out that in the absence of some evidence of prejudice or surprise, as evinced perhaps by a defendant's motion for a continuance, the discretion of the trial court should not be disturbed.

■ However, the denial of that part of the bill which requested the name of the person to whom the alleged sale was made requires some discussion. As authority that the denial of this request was prejudicial in the existing circumstances, appellant calls to our attention the much-cited case of Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957). That case does not sustain the breadth of the proposition for which it is cited. The fact is that unlike Sartain, Roviaro was indicted, tried convicted and sentenced, all without at any time having knowledge of the name of the government informant to whom he allegedly sold the narcotics. Yet, that informant was said to be a principal in the very transaction upon which Roviaro was convicted. The informant's alleged role was described in detail by several other government witnesses, and even cross-examination of these witnesses was forbidden on the matter of the informant's identity. 353 U.S. at 55, 77 S.Ct. 623.

The unfairness of requiring the defendant throughout his trial and even on appeal to struggle through with an unidentified informant is a denial of an important right. But the element of withheld identity is absent here. At the very outset of the instant trial Sartain learned Wallace's identity from the first government witness. Not only were the government's other witnesses subjected to thorough and searching cross-examination in this area, but Wallace himself was put on the stand by the government. Also, appellant's attorney ably cross-examined Wallace in an attempt to impeach him. In Roviaro the Court stressed the appellant's need for access to the *testimony* of the informant for any help it might give him in explaining to the jury his possession of the drug, as is required by these statutes once the possession is shown. 353 U.S. at 63–64, 77 S.Ct. 623. Here, access to such testimony was available within minutes after the government's first witness took the stand. If surprise existed, a motion for a continuance was available. Such a motion was not made.

■ Citing as authority Fletcher v. United States, 87 U.S.App.D.C. 306, 158 F.2d 321 (1946), appellant claims that

it was error for the trial court to fail to include of its own motion a special cautionary instruction on the credibility of the paid government witness, Wallace. First, we note that appellant was invited to and did submit requested instructions to the court. The proffered instructions by appellant did not include one containing the substance of the matter upon which appellant now tries to predicate error. The instructions as given were agreed to by appellant, and no objection was offered to them before or after trial. In Fletcher a specific request for such an instruction had been made and refused. Moreover, the issue is settled in this circuit by Young v. United States, 297 F.2d 593 (9th Cir. 1962), Mims v. United States, 254 F.2d 654 (9th Cir. 1958) and Orebo v. United States, 293 F.2d 747 (9th Cir. 1961). As in Young and Mims, we find no "exceptional circumstances" or substantial prejudice to justify our noticing an error not urged before the trial court. As in Orebo, we find after considering the merits that the general instruction actually given in this case was more cautionary than that given in Fletcher, supra,[1] and that corroboration of Wallace's activities was provided.

We come now to the assignment of error predicated upon the admission into evidence of the narcotics found in Sartain's briefcase, he at the time being under arrest on a narcotics charge. The thrust of appellant's argument on this point is that it was unreasonable for the officers, without a warrant, to open the briefcase and seize the narcotics upon the invitation of those who were then in control of the bag, and after appellant was in custody on a related charge. In considering this point, we adhere to the approach outlined in United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950):

"The relevant test is not whether it is reasonable to procure a search warrant, but whether the search is reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

See also, Harris v. United States, 331 U.S. 145, 150, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399 (1947): " 'Each case is to be decided on its own facts and circumstances.' "

In resolving the reasonableness of the activity shown in this record, we must measure the extent to which appellant's privacy has been forcibly invaded, the justification for an invasion, and the general reasonableness of the conduct of the officers in carrying it out. So measured, we think the instant search to have been a reasonable one. Here we have a situation where a defendant delivers his briefcase and the means of ac-

---

1. The comparative instructions are as follows:

*Fletcher:* "By [credibility] I mean, the amount of credit which you will give to the testimony of each witness, and in determining the credibility, you should take into consideration * * * any bias or prejudice on the part of any witness * * *. You may also consider any interest which any witness has in the outcome of the case * * *." Transcript of Testimony, p. 177.

*Orebo:* "All evidence of a witness whose self interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should be considered with caution and weighed with great care." 293 F.2d at 750, n. 4.

*The instant case:* "You should carefully scrutinize the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether the witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence." (R. 64).

cess to it to another, thereby voluntarily surrendering to a large degree his right of privacy. Upon defendant's being arrested and charged on a closely related offense, the person then in control of the bag forwards it through intermediaries to the police. The police, with probable cause for a search, and with reason to believe that control of the bag had been surrendered to the persons who turned it in, conduct a search. The search turns up, not general evidentiary materials, but objects subject to immediate forfeiture and seizure—the very instrumentalities of the crime. We cannot say of this activity, as was said in Holzhey v. United States, 223 F.2d 823 (5th Cir. 1955), that it was unreasonable under the circumstances. In Holzhey, unlike the instant case, the defendant had never given the means of access to her possessions to another, she was not being detained on any charge at the time the search was made, and the people in charge of the property did not request the police to investigate and take possession.

This and other circuits have held similar searches reasonable. In Von Eichelberger v. United States, 252 F.2d 184 (9th Cir. 1958), it was held not unreasonable for government investigating agents, upon the request of the person in control, to enter his garage and open boxes containing firearms stored there by the defendant. In United States v. Walker, 190 F.2d 481 (2d Cir.), cert. denied, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951), and 197 F.2d 287 (2d Cir.), cert. denied, 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679 (1952), it was held that the search of the defendant's luggage after his arrest, and with the consent of his presumed wife was not unreasonable. And in Driskill v. United States, 281 F. 146 (9th Cir. 1922), a search conducted under circumstances very similar to those in Von Eichelberger, supra, was upheld. See also Stein v. United States, 166 F.2d 851 (9th Cir.), cert. denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768 (1948), and United States v. Rees, 193 F.Supp. 849 (D.Md.1961).

Affirmed.