[Crim. No. 16365. Second Dist., Div. Two. Nov. 12, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM CONRAD PRANKE, Defendant and Appellant.

**COUNSEL**

David Henry Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Alan V. Hager, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**HERNDON, J.**—As authorized by Penal Code section 1538.5, subdivision (m), defendant purportedly seeks ". . . further review of the validity of a search or seizure on appeal from [his] conviction . . . notwithstanding the fact that such judgment of conviction is predicated upon a plea of guilty." Appellant contends: "I. Because appellant's arrest was made without probable cause, his consent to search his apartment, in which the marijuana was found, was constitutionally invalid." "II. Assuming, arguendo, that appellant's arrest was valid, his subsequent consent to the search of his apartment, without having been first informed of his Fourth Amendment rights, was constitutionally invalid." We have concluded that neither of these contentions is meritorious.

On the morning of September 16, 1968, the residence of Edward Clahan was burglarized. Clahan testified that earlier that morning appellant, a casual acquaintance whom Clahan had not seen for a year and one-half, called at the Clahan residence "saying that he was leaving and wanted to say good-bye [to a mutual friend], so, naturally, I gave him the [friend's] phone number." Appellant had been accompanied by another person whose identity was unknown to Clahan.

The following day, Officer Lee Fernimen of Hollywood Detectives, Burglary Detail, and his partner called at the apartment building located at 1811 North Tamarind where appellant was reportedly living. Although the apartment house manager advised them that appellant was no longer in residence there, the officers decided to investigate further by knocking on the door of the apartment appellant had formerly occupied. As they did so the occupant of the apartment across the hall, one Bruce Denton, opened his door and informed the officers that appellant had moved to an apartment building near Hollywood Boulevard and Wilcox.

After the officers had identified themselves to Denton and explained the purpose of their visit, Denton informed them that appellant "had brought some property into his apartment and was leaving it there until he could move it to the apartment building where he was living at that time . . . and he invited us inside to check the property." Denton directed the officers to "two suitcases, a box, a large cardboard box." A jewelry case and an item of jewelry located therein matched the description of the stolen property listed in the Clahan burglary report.

Denton offered to show the officers where appellant lived and while en route to his new residence Denton "pointed to an individual walking on the south side of the street and said, 'That's him there.'" The officers then stopped appellant, placed him under arrest and advised him of his constitu-

tional rights in accordance with the rules enunciated in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

After appellant had expressed his desire to talk to the officers without the aid of counsel, he was informed that they were investigating the burglary of the Clahan residence. Appellant denied any knowledge of the incident and spontaneously invited the officers to his new residence so that they "could check and see that he had no property from the burglary." Unfortunately for appellant, although this confident invitation did establish the fact that there were, indeed, no stolen items in his new residence, marijuana and various items of narcotic paraphernalia were discovered therein.

Thereafter, by reason of the strategy adopted by appellant's counsel, the burglary charge was dismissed upon motion under Penal Code section 995. However, when his motion under Penal Code section 1538.5 seeking to suppress the narcotics found in his possession was denied, he promptly entered a plea of guilty to this lesser offense. In addition, in accordance with an agreement previously effected, the prosecution offered no evidence to establish the prior narcotic conviction alleged against appellant, the trial court made no finding thereon and appellant was sentenced as a misdemeanant to a term in the county jail. He now appeals from this judgment.

 Initially, we hold in accordance with established appellate procedure that the issue appellant actually seeks to tender under the guise of his first broad contention is one that may not properly be presented or considered on this appeal. The question he now poses as being decisive was never urged in the court below and, therefore, no ruling thereon was ever made by the trial court. That is to say, the fruits of the search conducted in Denton's apartment *were introduced and received into evidence without the remotest hint of an objection by appellant* either at his preliminary hearing or at the special hearing authorized by Penal Code section 1538.5 which is expressly designed to permit the resolution of any objections directed to the admissibility of evidence obtained by a challenged search and seizure.

On the contrary, in accordance with the well planned trial strategy employed by appellant in the court below, he made no objection to the officers' testimony concerning their discovery of the stolen property found in Denton's possession. But now on appeal he reverses his position and for the first time urges that his arrest was improper because the stolen items discovered by the officers were in fact included with the other property he had left with Denton and because Denton had no authority to consent on his behalf to the officers' search of the luggage which he had left in Denton's possession.

As indicated, this theory of defense was never suggested in the trial court nor was that court ever requested to pass upon the propriety of Denton's

cooperation with the police. In the trial court appellant took the position that there was insufficient evidence to hold him to answer on the burglary charge, and insufficient evidence to justify his arrest, because the only evidence that the property found in Denton's apartment belonged to appellant was the word of an untested informant, Denton, who was unavailable as a witness.[1] This ingenious strategy proved successful and resulted in the dismissal of the more serious charge against appellant.

In this posture the trial court was called upon to determine only whether or not the officers properly relied on Denton's statements even though, as appellant implied, the stolen property found in Denton's apartment belonged to Denton who, therefore, had tried to shift the responsibility for its presence to the innocent appellant. The possibility that the officers' acceptance of Denton's invitation to inspect the property located in Denton's apartment constituted a violation of any of appellant's rights, i.e., was an illegal search and seizure, was never suggested at appellant's hearing.

■ Not having been called upon to rule on the admissibility of the evidence found in Denton's apartment, i.e., items stolen in the subject burglary, the trial court properly determined that such evidence, when combined with Denton's statements ascribing its ownership to appellant and the fact that

---

[1] At his preliminary hearing appellant's counsel had stated: "First of all, there will be a motion to dismiss Count I [the burglary charge], based on a complete lack of evidence. Anything we have in here is completely hearsay which connects the defendant with this jewelry box. The officer testified it was found in an apartment belonging to Bruce Denton, and Bruce Denton then denies that it's his, says it belongs to someone else. I'm sure that the Court is aware that this is a typical alibi story. So on Count I, there is no direct evidence whatsoever. I further move, your Honor, that there was no probable cause for the arrest, based upon these very circumstances. It doesn't seem that Bruce Denton was a very reliable type of individual. He could not even be found to be served with papers. He didn't appear in court. I believe this is the second date, too, for preliminary hearing. So the officer had to rely a great deal on what Bruce Denton said. . . . But my basic point, your Honor, is that there is nothing but hearsay evidence based on Bruce Denton, who is not even in court today, that the jewelry box was left with him, and that was also the basis for the arrest. It seems that it's unreliable."

This same theory was urged at appellant's hearing to suppress evidence in the trial court. Counsel argued: "Basically, your Honor, we have information from an unreliable informant. . . . No. 1, as I understand it, it is the People's burden to show that he is reliable. Now, you have a person who is connected with stolen property and we further do not have that witness available. He immediately leaves. This certainly, I think, takes it out of the reliable citizen category. Obviously his apartment is being used to store stolen property. . . . It would seem obvious that is not the good citizen type of informer that we have who reports a crime. This man, when the police came to his door, or when the police are knocking across from him, that is the time that he crosses to make this statement to the police about the stolen items and all of the contraband right in his apartment. . . . So, my position is that the arrest was unlawful because of the fact that Mr. Denton was not a reliable citizen-informant, . . . the arrest is unlawful, and because of that [appellant's] subsequent consent, any consent obtained as the result of an unlawful arrest is not admissible."

appellant had made a rare and unexpected visit to the scene of the crime immediately prior to its commission, provided abundant probable cause for appellant's arrest. With this determination we concur.

It is unnecessary to establish the "mathematical probability statistics" (cf. *People* v. *Collins,* 68 Cal.2d 319, 327 [66 Cal.Rptr. 497, 438 P.2d 33]), of (1) any given person visiting a casual acquaintance for the first time in a year and one-half; (2) a burglary occurring thereafter the moment the resident has departed the premises; (3) property stolen therefrom being found the following day in a box located in an apartment adjoining that formerly occupied by the visitor; and (4) the party in possession of the box having volunteered the information that its contents belonged to the visitor prior to the discovery that it contained the fruits of the burglary. It is merely necessary for us to hold, as we do, that when such remarkable coincidences coalesce, they "are sufficient to warrant a prudent man in believing that the defendant has committed an offense. [Citation.]" (*People* v. *Hogan,* 71 Cal.2d 888, 890 [80 Cal.Rptr. 28, 457 P.2d 868].)

With this foundation established, the court also ruled that the officers' acceptance of appellant's spontaneous invitation to inspect his new apartment did not constitute an unreasonable search and seizure. The court did, however, dismiss the burglary charge because without Denton's presence as a witness, his hearsay declarations could not be considered on the merits of this charge and without them the evidence would be insufficient to sustain his conviction.[2]

Few rules of appellate procedure are more well established than that which requires that issues relating to the admissibility of evidence must be tendered at the trial level and a ruling obtained thereon after each side has had the opportunity to fully develop the facts relevant thereto. (*People* v. *De Santiago,* 71 Cal.2d 18, 22-23 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Ibarra,* 60 Cal.2d 460, 462 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Rojas,* 55 Cal.2d 252, 260 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252]; Witkin, Cal. Evidence (2d ed. 1966), § 1285, p. 1188.) Certainly a defendant who has not merely passively acquiesced in the receipt of certain evidence, but has urged a theory based thereon to his great advantage, may not on appeal urge the adoption of an entirely different and inconsistent theory in order to totally defeat the administration of justice.

The rationale underlying this rule is particularly compelling when the

---

[2]The court recognized that technically Denton's absence did not require that the burglary charge be dismissed in response to appellant's motion under Penal Code section 995 but stated that "realistically and practically we might as well dispose of it now. The motion is granted."

failure to object occurs, not in a trial on the merits, but in a 1538.5 hearing that is specifically designed to determine all issues relating to the suppression of evidence allegedly obtained by improper police conduct. That is to say, the suppression of such evidence actually defeats justice insofar as the merits of the individual case is concerned although we regard such sacrifice as necessary in order to protect other more compelling social rights. Therefore, where, as here, an admittedly guilty defendant has failed to challenge a search and seizure conducted in another's apartment in the pretrial forum specially provided for such a challenge, he may not, following his acknowledgment of guilt, present such an issue for the first time on appeal.

In fact, the instant appeal might well be regarded as subject to dismissal since, although it purports to be taken under the exception to Penal Code section 1237.5 provided by Penal Code section 1538.5, as it has been presented it actually does not fall within the true purview thereof. What section 1538.5 authorizes is a *"further review* of the validity of a search or seizure on appeal . . . notwithstanding . . . a plea of guilty." (Italics added.) By utilizing the words "further" and "review," the Legislature has made unmistakably clear that the exception provided by this section was not designed to permit an appellate court to make an "initial" and "plenary" factual decision concerning the validity of a search or seizure that might have been urged at the trial level in a 1538.5 hearing, but was not.

The point that both appellant and the dissent herein appear to ignore is that although the trial court was called upon to determine the admissibility of the marijuana discovered in the search of appellant's apartment, it was never called upon to test the validity of the search conducted within Denton's apartment because no objection was ever made to the receipt of the fruits of this search and seizure. Therefore, by definition, there is simply no decision with respect to *"this"* search and seizure which we may *"further review."*

Although we hold that the contention that an illegal search and seizure occurred in Denton's apartment is not properly before us, we also express our disagreement with appellant's premise that the undisputed evidence demonstrates such illegality as a matter of law. So far as appears in the record before us, if as he now suggests appellant left his property in Denton's custody, he made no effort to restrict *Denton's rights as a citizen* to cooperate with the authorities in the course of their reasonable investigation of a reported crime or to insure that he, Denton, had not been made an unwitting accomplice in criminal activity.

In every material respect the instant case is identical with that considered by the court in *Sartain* v. *United States,* 303 F.2d 859, 862, certiorari

denied by the United States Supreme Court, 371 U.S. 894 [9 L.Ed.2d 127, 83 S.Ct. 194.]

In *Sartain,* the defendant had left a locked brief case and a key with a friend. When the friend heard that the defendant had been arrested upon a narcotics charge, he turned the brief case over to his attorney who called the police. Unable to find the key, the officers cut the flap on the case and discovered a large quantity of heroin therein. Our present case differs from *Sartain* only in the immaterial respect that appellant's belongings were not locked and his friend knew that he was being sought in connection with a crime rather than having theretofore been arrested. In passing upon the propriety of search and seizure in *Sartain,* the court stated (at pp. 862-863): "We come now to the assignment of error predicated upon the admission into evidence of the narcotics found in Sartain's briefcase, he at the time being under arrest on a narcotics charge. The thrust of appellant's argument on this point is that it was unreasonable for the officers, without a warrant, to open the briefcase and seize the narcotics upon the invitation of those who were then in control of the bag, and after appellant was in custody on a related charge. In considering this point, we adhere to the approach outlined in United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950):

" 'The relevant test is not whether it is reasonable to procure a search warrant, but whether the search is reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment.' See also, Harris v. United States, 331 U.S. 145, 150, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399 (1947): ' "Each case is to be decided on its own facts and circumstances." '

"In resolving the reasonableness of the activity shown in this record, we must measure the extent to which appellant's privacy has been forcibly invaded, the justification for an invasion, and the general reasonableness of the conduct of the officers in carrying it out. So measured, we think the instant search to have been a reasonable one. Here we have a situation where a defendant delivers his briefcase and the means of access to it to another, thereby voluntarily surrendering to a large degree his right of privacy. Upon defendant's being arrested and charged on a closely related offense, the person then in control of the bag forwards it through intermediaries to the police. The police, with probable cause for a search, and with reason to believe that control of the bag had been surrendered to the persons who turned it in, conduct a search. The search turns up, not general evidentiary

materials, but objects subject to immediate forfeiture and seizure—the very instrumentalities of the crime. We cannot say of this activity, as was said in Holzhey v. United States, 223 F.2d 823 (5th Cir. 1955), that it was unreasonable under the circumstances. In Holzhey, unlike the instant case, the defendant had never given the means of access to her possessions to another, she was not being detained on any charge at the time the search was made, and the people in charge of the property did not request the police to investigate and take possession.

"This and other circuits have held similar searches reasonable. In Von Eichelberger v. United States, 252 F.2d 184 (9th Cir. 1958), it was held not unreasonable for government investigating agents, upon the request of the person in control, to enter his garage and open boxes containing firearms stored there by the defendant. In United States v. Walker, 190 F.2d 481 (2d Cir.), cert. denied, 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653 (1951), and 197 F.2d 287 (2d Cir.), cert. denied, 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679 (1952), it was held that the search of the defendant's luggage after his arrest, and with the consent of his presumed wife was not unreasonable. And in Driskill v. United States, 281 F. 146 (9th Cir. 1922), a search conducted under circumstances very similar to those in Von Eichelberger, supra, was upheld. See also Stein v. United States, 166 F.2d 851 (9th Cir.), cert. denied, 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768 (1948), and United States v. Rees, 193 F.Supp. 849 (D.Md. 1961)."

The record wholly fails to suggest any lack of authority on Denton's part to treat as he did with the property left in his exclusive custody. Furthermore, even if we should assume, despite the absence of such evidence, that, in fact, such authority had been withheld, this would still not detract from the reasonableness of the officers' reliance on Denton's ostensible authority.

The reasoning of our Supreme Court in *People* v. *Hill,* 69 Cal.2d 550, 554-555 [72 Cal.Rptr. 641, 446 P.2d 521], is equally apposite here: "There remains the question whether Hill's absence and Miller's lack of control of the premises combined to render a valid arrest insufficient warrant for the ensuing search; whether, in brief, the special concern for *privacy* implicit in the Fourth Amendment should override the ostensible reasonableness of the police action. In a chain of cases presenting analogous questions concerning vicarious waivers of constitutional rights, the answer has been no.

"In *People* v. *Gorg,* 45 Cal.2d 776, 783 [291 P.2d 469], the defendant rented a room in a private residence. In defendant's absence, the homeowner allowed the police to search the room where they found narcotics. The court held that where 'officers have acted in good faith with the consent and at the request of a home owner in conducting a search, evidence so obtained cannot be excluded merely because the officers may have made a

reasonable mistake as to the extent of the owner's authority.' Although sometimes criticized, the rule that a search is not unreasonable if made with the consent of a third party whom the police reasonably and in good faith believe has authority to consent to their search has been regularly reaffirmed. (See, e.g., *People* v. *Smith, supra,* 63 Cal.2d 779, 799 [48 Cal. Rptr. 382, 409 P.2d 222]; *People* v. *Caritativo,* 46 Cal.2d 68, 72-73 [292 P.2d 513]; *People* v. *Corrao,* 201 Cal.App.2d 848, 852 [20 Cal.Rptr. 492]; *People* v. *Yancy,* 196 Cal.App.2d 665, 667 [16 Cal.Rptr. 766]; *People* v. *Williams,* 189 Cal.App.2d 29, 38 [11 Cal.Rptr. 43]; *People* v. *Ransome,* 180 Cal.App.2d 140, 145-146 [4 Cal.Rptr. 347]; Witkin, Cal. Evidence (2d ed. 1966) §§ 82-88, pp. 78-82.)

"These cases contain the two unusual elements found here: An absent defendant and license to search provided by a person without actual authority to do so. They recognize that any search or arrest constitutes a substantial invasion of privacy. They conclude that such invasions are not more obnoxious when predicated upon a mistake."

That the holding in *People* v. *Hill, supra,* 69 Cal.2d 550, still represents the law in California was made clear by its recent citation and analysis in *People* v. *McGrew,* 1 Cal.3d 404, 412 [82 Cal.Rptr. 473, 462 P.2d 1]. The majority of the court in *McGrew* merely determined that in that instance it had not been reasonable for the police to believe that one who had presented a locked footlocker to a public carrier for the limited purpose of transport, had thereby authorized the carrier to call in the police to search it for contraband.

Of course, our Supreme Court's earlier decision in *People* v. *Cruz,* 61 Cal.2d 861, 866 et seq. [40 Cal.Rptr. 841, 395 P.2d 889], is not to the contrary. Instead of seeking consent to search certain suitcases from *their owners, who were then present,* the officers in *Cruz* had carried out "a general exploratory search" of a "conglomeration of goods" which they knew neither belonged to, nor had been entrusted to the custody of, the tenants of the apartment wherein they were discovered.

 Appellant's secondary contention regarding his invitation to the police to search his new residence is equally unmeritorious. His argument that, in addition to the *Miranda* warnings afforded him, he should have been advised of his constitutional right to be free of searches has been consistently rejected in this state. (*People* v. *Superior Court,* 71 Cal.2d 265, 270, fn. 7 [78 Cal.Rptr. 210, 455 P.2d 146], and cases cited therein.)

In this connection it may be noted that even if appellant's trial tactics had not precluded the court's ruling upon the admissibility of the stolen property found in Denton's apartment to establish probable cause for appellant's

arrest, it still would not necessarily follow that his spontaneous invitation to the police should have been rejected by them. As stated in *People* v. *Sesslin,* 68 Cal.2d 418, 428 [67 Cal.Rptr. 409, 439 P.2d 321]: ██ "That degree of 'attenuation' which suffices to remove the taint from evidence obtained directly as a result of unlawful police conduct requires at least an intervening independent act by the defendant or a third party which breaks the causal chain linking the illegality and evidence in such a way that the evidence is not in fact obtained 'by exploitation of that illegality.' *Consent by the defendant, if 'sufficiently an act of free will to purge the primary taint of the unlawful [arrest]'* (*Wong Sun* v. *United States, supra,* 371 U.S. at p. 486 [9 L.Ed.2d 454]), *may produce the requisite degree of 'attenuation.' "* (Italics added.)

It is true, of course, that ordinarily mere "consent secured immediately following an illegal . . . arrest . . . is inextricably bound up with the illegal conduct and cannot be segregated therefrom." (*People* v. *Haven,* 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].) However, by definition "consent" refers to a voluntary yielding in the face of a request, an acquiescence or concurrence to a solicitation made by others.

One who has just been subjected to an illegal arrest may well be emotionally unable to decline the offending officer's "request" or "solicitation" to search his residence. However, when the roles are reversed and it is the person himself who "requests" or "solicits" the officer's visit and inspection of his residence, it is most difficult semantically or logically to characterize such *sua sponte* conduct as "compelled." As aptly observed in *People* v. *Doerr,* 266 Cal.App.2d 36, 39 [71 Cal.Rptr. 889]: "Doerr [the defendant therein] volunteered his consent to a search of his car without the officer having asked for permission. On appeal it is argued the consent demonstrated 'an innocent mind or a clever gambler.' We disagree only with attributing such a clumsy bluff to a *clever* gambler. Doerr's consent was not in response to any assertion of authority and could only be deemed free and voluntary." (Italics found in the original decision.) Appellant, like the defendant Doerr, was indeed a gambler, albeit a crude rather than a clever one.

Of course, as previously indicated, we need not, and do not, decide this issue in the instant case. It is sufficient to hold, as we do, that in ruling on the only question presented to it for resolution, the trial court properly determined that appellant's arrest was legal and that appellant's subsequent invitation to the officers to search his residence was voluntary.

The judgment is affirmed.

**FLEMING, J.**—I concur in the opinion.

Additionally, I conclude that Denton for his own protection was justified in taking the action he took. After two suitcases and a cardboard box had been left by Pranke in Denton's apartment and in his custody, Denton learned from the police they were looking for Pranke in connection with a burglary investigation. Denton invited the police inside "to check the property." I think Denton had a right to do this in order to safeguard his own interests. I think he was entitled to forestall the possibility of criminal charges materializing against him for receiving stolen property or aiding and abetting a burglary if it should develop that he was the possessor and custodian of the fruits of a crime.

If we suppose a similar set of circumstances, a similar inquiry of the police, and their explanation that they were conducting an investigation for stolen explosives, stolen weapons, stolen bearer bonds, kidnap ransom money, or plates for counterfeit currency, it seems obvious to me Denton would be justified in inviting the police to check over property in his custody for his own protection. *Frazier* v. *Cupp,* 394 U.S. 731, 740 [22 L.Ed.2d 684, 693, 89 S.Ct. 1420], strongly suggests that the lawful custodian of property has authority to consent to its search. See also *Abel* v. *United States,* 362 U.S. 217 [4 L.Ed.2d 668, 80 S.Ct. 683]; *People* v. *Smith,* 63 Cal.2d 779, 801 [48 Cal.Rptr. 382, 409 P.2d 222].

I think the right of a custodian of property to protect himself covers not only instances of suspected murder and espionage but extends to such less spectacular crimes as receiving stolen property and burglary.

**ROTH, P. J.**—I dissent.

The decisive question is whether the search of appellant's apartment which led to the discovery of marijuana was lawful. If the search was unlawful, the evidence introduced as a result of the search, which led to appellant's conviction, should have been excluded and the judgment should be reversed.

In my opinion the search was irremediably tainted by the illegality of appellant's arrest which preceded the search. The majority holds this court is precluded from adjudicating the legality of appellant's arrest because appellant failed to present the precise ground to the trial court on which he seeks a reversal.

The majority concede, as the record shows, that the legality of appellant's arrest was put in issue in the trial court, but hold that, since the legal theory upon which the arrest is now argued to be unlawful is different from the

theory urged before the trial court, appellant is barred by the rules of appellate practice from disputing the legality of the arrest.

It is basic that theories which have not been presented to the trial judge cannot properly be presented for the first time on appeal. (*Rivas* v. *Ayala,* 208 Cal.App.2d 239, 242-243 [25 Cal.Rptr. 48].) It is equally fundamental, however, that where the newly advanced theory presents only a question of law and where the facts are not disputed, a change of theory is permitted on appeal. (*Roberts* v. *Roberts,* 241 Cal.App.2d 93, 98 [50 Cal. Rptr. 408].)

The difference in theory upon which the majority leans is the failure of appellant to have urged in the trial court in support of his motion the specific evidence undisputably in the record which he now argues before this court. The majority says that the presentation of such evidence as support for the motion should have been made at the trial level, where each side has the opportunity to fully develop and argue all the evidence either relies upon.

At bench, after a dismissal of the burglary count, the legality of the search and seizure of the marijuana was put in issue by a motion under Penal Code section 1538.5, to suppress the evidence. At that hearing, counsel argued that the arrest was unlawful because it was based on intelligence obtained from two unreliable informants of whom Denton was one. The argument added on appeal is that the arrest was unlawful because it was also based on the preceding search of appellant's belongings at Denton's apartment. That search, it should be remembered, yielded the jewelry box which allegedly connects appellant to the burglary.

I am not persuaded by the majority that Denton had the legal authority to authorize the officers to search appellant's belongings. This right fashioned by the majority for Denton to cooperate as a citizen and thus lawfully authorize the search of appellant's property is an innovation for which the majority cites no authority and for which I find no support in logic or policy. The majority's invocation of the rule that the officers could reasonably rely on Denton's ostensible authority is similarly erroneous, for this rule does not apply where the third party—in this case, Denton—makes clear that the property belongs to another. (*People* v. *McGrew,* 1 Cal.3d 404, 413 [82 Cal.Rptr. 473, 462 P.2d 1].)[1]

---

[1]Although holding that the search in Denton's apartment was not properly before this court, the majority argue at length to sustain it and fortify their position quoting at length from *Sartain* v. *United States* (9th Cir. 1962) 303 F.2d 859, at p. 862. *Sartain* was not ignored in *People* v. *McGrew, supra,* 1 Cal.3d 404, 413 and in an immediately prior decision, our Supreme Court said at page 86: ". . . although we are bound by the decisions of the United States Supreme Court interpreting the

Taking Denton's statements at face value, nothing is revealed but appellant's purported desire to leave his belongings with Denton until he could move them to his apartment. Nothing in the circumstances related by Denton to the officers suggested any authority on Denton's part over appellant's property.

The facts underlying the presentation of the primary point, to wit: illegal arrest, are undisputed. It is undisputed, too, that the objection to the admission of the marijuana as evidence was before the trial court. The general theory underlying the objection to the evidence, namely that the seizure was tainted by the preceding illegal arrest, was presented to the trial court. The only change in the presentation of the same point before this court is the specific urging of evidence in the record that Denton was not authorized to consent to the search of suitcases allegedly belonging to appellant. Such a change is not a change in legal theory. It is actually a different presentation of one theory rather than a change to another. In any event, if it be a change of theory, the objection made against a backdrop of the undisputed facts set out at bench is sufficient, in my opinion, to give appellant the right to argue the evidence alluded to in this court as a proper basis to sustain the objection.

The cases cited by the majority do not support its position. In two of the cited cases no objection of any kind was made to the admission of the evidence at trial. (*People* v. *Robinson,* 62 Cal.2d 889, 894 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Ibarra,* 60 Cal.2d 460, 462 [34 Cal.Rptr. 863, 386 P.2d 487].) At bench, the motion to suppress the evidence was vigorously urged.

In *People* v. *De Santiago,* 71 Cal.2d 18 [76 Cal.Rptr. 809, 453 P.2d 353], the evidence was objected to at trial on grounds other than those that were urged on appeal. At trial, the arrest was argued to be illegal while on appeal the defendant claimed a lack of compliance with Penal Code section 844 as grounds for exclusion of the evidence. (*Id.* at p. 22, fn. 3.)[2] At bench, the grounds for the exclusion of the tainted evidence was all the evidence that showed the illegality of the arrest. Only the presentation of all the evidence underlying and supporting the motion to suppress has changed. To deny appellant the opportunity to make a full presentation of the undisputed facts which support his motion is not only overly technical, but is, in my opinion, technically wrong.

---

federal Constitution . . . we are not bound by the decisions of the lower federal courts even on federal questions. However, they are persuasive and entitled to great weight." (*People* v. *Bradley,* 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129].)

[2]It is not apparent what grounds were urged at trial for the motion to exclude certain evidence in *People* v. *Rojas,* 55 Cal.2d 252 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252], another case cited by the majority.

A further defect in the majority's decision is that appellant, in addition to urging evidence in the record which he did not argue in the trial court, also asserts on appeal that the evidence he did argue, to wit: that the information leading to appellant's arrest was not reliable and that the arrest was therefore illegal, was adequate to support the motion to suppress. (*Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].)

The majority briefly notes that the information supplied by Denton, combined with the coincidence of appellant's earlier presence at the scene of the burglary, provided the requisite probable cause for the arrest. Denton gave no information to the police other than that connected with appellant's whereabouts. An admittedly anonymous informer other than Denton provided the information that appellant had been trying to sell property taken in the burglary.

The required corroboration of this anonymous tip (*People* v. *Reeves*, 61 Cal.2d 268, 273-274 [38 Cal.Rptr. 1, 391 P.2d 393]) is sought by the majority in the "coincidence" of appellant's earlier presence at the scene of the burglary. However, "[t]here is nothing to support a reasonable belief that any man . . . has committed a felony simply because he is seen going in and out of a private home in a normal manner." (*People* v. *Privett*, 55 Cal.2d 698, 702 [12 Cal.Rptr. 874, 361 P.2d 602].) I disagree with the majority that the coincidental presence of appellant in Mr. Clahan's home prior to the burglary corroborates the vital fact that appellant had committed the burglary. Even on the limited presentation to the trial court and again urged by appellant in this forum, I would find that appellant's arrest was illegal.

If the arrest was illegal, the majority leans on the slender reed that appellant's *invitation* to the officers to search his apartment attenuated the taint of the illegal arrest.

The holding of our Supreme Court that a search and seizure made pursuant to consent secured immediately after an illegal arrest are inextricably bound up with that arrest is difficult to misunderstand. (*People* v. *Henry*, 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557].)[3] *Henry*, in my opinion, is controlling in this case even though it may be the subject of nice semantic speculation whether "consent" is "invitation." At least once it has

---

[3]It should be noted, too, that in *Henry*, the search was held illegal even though the arrest in *Henry* was legal. Further, the record in the case at bench shows there was more probable cause to arrest Denton who the majority seek to show was an authorized agent, but who is referred to by the trial judge as the "finger-man."

been found that the two terms are equivalents. (*People* v. *Doerr*, 266 Cal. App.2d 36, 38-39 [71 Cal.Rptr. 889].) In my opinion, appellant's consent or invitation to search his apartment was tainted by his illegal arrest and on the clear holding in *Henry* the search was tainted even if the arrest of appellant had been a legal one.

I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied January 21, 1971.