Filed 4/30/14  P. v. Hill CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B249361 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA072579) |
| v. | |
| RONALD HILL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Michael V. Jesic, Judge.  Reversed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General and Timothy M. Weiner, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant Ronald Hill pleaded guilty to acquiring personal identifying information with a prior conviction for the same offense in violation of Penal Code section 530.5, subdivision (c)(2),[1] forgery (§ 475), transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)) and receiving stolen property (§ 496), a total of four counts. He was sentenced to six years in the county jail. This appeal, authorized by subdivision (m) of section 1538.5, is from the order denying his motion to suppress made as part of the preliminary hearing.[2]

Defendant's sole contention on appeal is that the trial court ruled erroneously on defendant's suppression motion, mistakenly finding that a warrantless search of defendant's vehicle that disclosed incriminating evidence was lawful because it was an inventory search conducted in connection with the impoundment of a vehicle.

We conclude that the trial court erred in finding that the items sought to be suppressed were the result of a lawful impound inventory search for two reasons. First, the police officer who conducted the search testified that it was a "probable cause" search, not an inventory search. Second, the People did not meet its burden of establishing that the search was made pursuant to a standard police policy governing searches following impoundment of a vehicle or that the police officers followed that policy. Such a showing is an absolute requirement. Therefore, we reverse.

**FACTS**

On October 17, 2012, Los Angeles Police Officer John Antonioli and his partner, Officer Burke,[3] made a traffic stop on a public street for a loud exhaust and also because

---

[1] Undesignated statutory references are to the Penal Code.

[2] The motion to suppress appears to have been renewed for purposes of the section 995 motion, when it was again denied. Under these circumstances, we review the determination of the magistrate who originally ruled on the motion. (*People v. Thompson* (1990) 221 Cal.App.3d 923, 940.) We refer to the magistrate as the trial court hereafter for ease of reference.

[3] Burke's first name is not given.

the car's muffler was improperly secured to the vehicle. Defendant was driving. There was no one else in the car.

Officer Burke asked defendant for his driver's license. Defendant stated that he did not have it with him. Burke asked defendant for his name, address, date of birth, height and weight, which defendant supplied. Burke ran the information and learned that defendant's license had expired. Antonioli told Burke to take defendant out of the car because the officers were going to impound the car. They intended to do so because defendant did not have a driver's license. Los Angeles Police Department procedure called for the vehicle to be impounded for a 30-day period. Defendant does not contest the legality of the stop or the decision to impound the car.

Defendant was asked to exit the vehicle. Antonioli testified, "I was going to conduct an inventory search for items of value prior to impounding the vehicle. . . . [¶] . . . [¶] I went to the vehicle, and I observed a dagger on the front seat of — the front passenger seat of the vehicle partially concealed by a purse. . . . [¶] . . . [¶] I advised Officer Burke of the dagger, and we proceeded to detain the defendant for further investigation. . . . [¶] . . . [¶] I continued a probable cause search of the vehicle."

Antonioli now performed a "probable cause" search of the car. The center console contained a wallet with a California driver's license of a Rick White and a credit card. The photo on the license was that of defendant but the identifying information on the license did not match defendant's. In addition to the purse on the front seat, there were numerous items on the backseat of the car.

Antonioli described the ensuing events in these words: "We decided to transport the defendant to North Hollywood Station and take the vehicle to North Hollywood station for further inventory search. [¶] Q. Why? [¶] A. Because we believed that there were additional items that could possibly be stolen inside of the vehicle as possible additional weapons."

A search of the car disclosed checks, airsoft rifles, 12.41 grams of methamphetamine, approximately $200 in cash, and five additional driver's licenses. These items appear to have been found in the car at the scene of the traffic stop. There

also must have been a search of the car at the police station, in that Antonioli testified that 189 items were recovered from the car.

## APPLICABLE LEGAL PRINCIPLES

Because the pertinent procedural history revolves around the law dealing with vehicle impounds by the police and ensuing inventory searches, we summarize the law on this subject before turning to the procedural history.

"As part of their '"community caretaking functions,"' police officers may constitutionally impound vehicles that 'jeopardize . . . public safety and the efficient movement of vehicular traffic.' (*South Dakota v. Opperman* (1976) 428 U.S. 364, 368–369 [49 L.Ed. 1000, 96 S.Ct. 3092] (*Opperman*).) Whether 'impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft.' [Citation.] If officers are warranted in impounding a vehicle, a warrantless inventory search of the vehicle pursuant to a standardized procedure is constitutionally reasonable. (*Opperman*, *supra*, 428 U.S. at p. 372.) . . . Although a police officer is not required to adopt the least intrusive course of action in deciding whether to impound and search a car [citation], the action taken must nonetheless be reasonable in light of the justification for the impound and inventory exception to the search warrant requirement. Reasonableness is '[t]he touchstone of the Fourth Amendment.' [Citation.]" (*People v. Williams* (2006) 145 Cal.App.4th 756, 761–762.)

The prosecution must prove the existence of a standard policy governing searches following the impoundment of a vehicle and it must also prove that the police followed that policy. (*People v. Williams* (1999) 20 Cal.4th 119, 138, citing *Florida v. Wells* (1990) 495 U.S. 1, 4–5 [109 L.Ed.2d 1, 110 S.Ct. 1632].)

## PROCEDURAL HISTORY

### A. Suppression motion

One of the grounds of defendant's suppression motion was the prosecution was required to show that the inventory search was conducted pursuant to a standard police protocol. Defense counsel pointed out that Antonioli had not testified about any standard

4

used by the police in conducting the inventory search. In addition, defense counsel challenged the prosecution to take a position on whether the police officer had performed an inventory search or whether he performed the "automobile search based upon the knife? I think under either theory the search was improper." Defense counsel correctly observed that the search "based upon the knife" was not a lawful search because it was not a violation of section 21310 to have a knife sitting on the passenger seat of a car.[4] The Attorney General concedes on appeal that it was not unlawful for the knife to be on the passenger seat, as the statute addresses only such weapons concealed on the defendant's "person."

Defense counsel also argued that the search of the car was very extensive and that the search could not have been based on fear for the officer's safety because defendant had already been removed from the car so that he could not have reached the knife. Accordingly, he contended, the officer was not permitted to continue with the search. Defense counsel also argued that the decision to impound the car and any impound search were not justified.

The prosecutor responded to the defense argument about the impoundment of the car. According to the prosecutor, Antonioli testified about LAPD protocol for doing an inventory search. Defendant denies that such testimony was provided. The prosecutor briefly mentioned the knife as a dangerous weapon, but did not respond to the defense argument that the search was unlawful if it was based on the presence of the knife.

The trial court concluded the hearing with these observations: "And one of the things the court[5] talks about is that there is — the police do have a responsibility to make sure that things — that the car isn't broken into and things stolen out of it. That's one of the reasons for impounding a car. [¶] So based on the facts of this case, the fact

---

[4] Section 21310 prohibits concealing "upon the person" a dirk or a dagger.

[5] The trial court was talking about the United States Supreme Court in *Florida v. Wells*, *supra*, 495 U.S. 1, which held that officers may open a closed container found in the trunk of an impounded car only pursuant to a general policy to open all containers in an inventory search.

5

that there was — that the defendant lied to the police, that he had no license, that there was nobody else available to move the car, that the officers followed the protocol, the L.A.P.D. protocol, that they felt that the car was a target for vandalism based on the purse and the — and also based on the fact that there was a weapon in the car, I believe that they did have the right in their discretion to impound the car and that the community caretaking function was being considered in this case, and the motion is denied." The trial court did not discuss the "probable cause" search that Antonioli made after discovering the knife. We understand the trial court's ruling on the motion to suppress to have been based on his view that an inventory search was conducted and was appropriate after Antonioli saw the knife.

## B.  Subsequent proceedings

Defendant renewed his motion to suppress for purposes of his section 995 motion in the trial court. When it was again denied, he pleaded guilty to the offenses listed above. This appeal followed.

## DISCUSSION

## A.  The People did not meet its burden of establishing that any inventory search occurred

The testifying officer's own words establish that no inventory search was conducted. As Officer Antonioli testified, "I *was going to* conduct an inventory search for items of value" (italics added), but when he saw the dagger partially hidden by the purse on the front seat, he performed, as he put it, a "probable cause search." His stated reason for the "probable cause search" was that it was a Penal Code violation for defendant to have a concealed weapon. When the officers decided to take the car to the station, it was for an inventory search, but also because the officers believed the search might reveal additional stolen items and weapons.

Defendant agrees that "an inventory search never actually occurred."

Since it is clear that the search that Antonioli conducted on the scene of the traffic stop was not an inventory search, the People failed to bear its burden of establishing that

the search was authorized by the impound inventory search doctrine. Therefore, the trial court's ruling that the inventory search was lawful was erroneous.

**B. The People did not meet its burden of establishing the existence of a standard policy governing impound inventory searches, or that the officers complied with that policy**

Defendant contends that, since the trial court "relied solely upon the inventory search exception," the People had the burden of proving the existence of a standard policy and that the police followed the policy. This is in fact the rule. (*People v. Williams*, *supra*, 20 Cal.4th at p. 138.)

We cannot find in the record any evidence of a standard police policy governing impound inventory searches, what the policy was or whether the officers conducted themselves in compliance with the policy. It was the People's burden to establish the foregoing. (*People v. Williams*, *supra*, 20 Cal.4th at p. 138.) Absent such evidence, the trial court's ruling was erroneous.

**C. We cannot consider theories regarding the search that were not raised in the trial court**

"Few rules of appellate procedure are more well established than that which requires that issues relating to the admissibility of evidence must be tendered at the trial level and a ruling obtained thereon after each side has had the opportunity to fully develop the facts relevant thereto. [Citations.] . . . [¶] The rationale underlying this rule is particularly compelling when the failure to object occurs, not in a trial on the merits, but in a 1538.5 hearing that is specifically designed to determine all issues relating to the suppression of evidence allegedly obtained by improper police conduct. . . . [¶] What section 1538.5 authorizes is a '*further review* of the validity of a search or seizure on appeal . . . notwithstanding . . . a plea of guilty.' . . . By utilizing the words 'further' and 'review,' the Legislature has made unmistakably clear that the exception provided by this section was not designed to permit an appellate court to make an 'initial' and 'plenary' factual decision concerning the validity of a search or seizure that might have been urged

7

at the trial level in a 1538.5 hearing, but was not." (*People v. Pranke* (1970) 12 Cal.App.3d 935, 941–942.)

Both sides here have advanced theories in their appellate briefs that were not raised in the trial court. The Attorney General contends on appeal that the search Antonioli performed at the scene can be justified as one incident to an arrest and that the inevitable discovery rule[6] validates the search. Defendant disagrees and contends that the search cannot be justified by the automobile exception.[7] We cannot consider these contentions because they were not raised below. (*People v. Pranke*, *supra*, 12 Cal.App.3d at pp. 941–942.)

## DISPOSITION

The judgment is reversed.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

[6] "Under the inevitable discovery doctrine, illegally seized evidence may be used where it would have been discovered by the police through lawful means." (*People v. Robles* (2000) 23 Cal.4th 789, 800.)

[7] This exception allows the police to search a car without a warrant as long as the police have probable cause to believe there is evidence of a crime or contraband in the vehicle. (*Carroll v. United States* (1925) 267 U.S. 132, 162 [69 L.Ed. 543, 45 S.Ct. 280].)

* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.